(Nos. 30436-7.—

BERNARD J. FALLON, Trustee for Chicago Rapid Transit Company, Appellant, *vs.* ILLINOIS COMMERCE COMMISSION, Appellee.—(CHICAGO TRANSIT AUTHORITY, Intervenor, Appellant.)

*Opinion filed Nov. 18, 1948—Rehearing denied March 21, 1949.*

HERBERT M. JOHNSON, and BELL, BOYD & MARSHALL, both of Chicago, (THOMAS L. MARSHALL, and DAVID A. WATTS, of counsel,) for appellant Bernard J. Fallon; WERNER W. SCHROEDER, of Chicago, for appellant Chicago Transit Authority.

GEORGE F. BARRETT, Attorney General, of Springfield, (WEYMOUTH KIRKLAND, HOWARD ELLIS, and WILLIAM C. WINES, all of Chicago, of counsel,) for appellee.

Per CURIAM: This is a consolidated case from Cook County, involving two applications by the Chicago Junction Railroad Company to the Commerce Commission of Illinois. A petition in No. 30437 was filed by the railroad company with the commission in 1943, seeking authority and permission to operate a common carrier system over its own streetcar lines, then operated under order of the bankruptcy court by the Chicago Rapid Transit Company, a previous long-term lease by the latter having been terminated by order of court. A short time later the railroad company filed another petition with the Illinois Commerce Commission to require the Chicago Rapid Transit Company, hereafter referred to as the transit company, to permit the use of 1743 feet of its track jointly with the said railroad company, in this court as No. 30436.

The order in No. 30436 was entered by the commission September 11, 1945, and upon appeal was affirmed by the circuit court of Cook County on June 17, 1947. After this order was entered by the commission, and the matter still pending in the courts, the properties of the Chicago Rapid Transit Company were sold by order of the United States District Court to the Chicago Transit Authority, appellant, hereafter referred to as the Authority. The Chicago Transit Authority was created by an act of the General Assembly in May, 1945, and it prayed leave to intervene in both of said causes. The leave to intervene was allowed, but the circuit court held the orders were properly binding upon it, because the commission had jurisdiction over the Chicago Rapid Transit Company, and consequently binding upon the Chicago Transit Authority, the purchaser of such properties. The Authority appeals directly to this court under section 69 of the Public Utilities Act. Ill. Rev. Stat. 1947, chap. 111⅔, par. 73.

Prior to the filing of the petitions mentioned above, the transit company operated a system of street railways in the city of Chicago, and also leased the tracks and properties

of the Chicago Junction Railroad Company, and under said lease operated a railway system for carriage of passengers over the same as a part of its own transit system.

The railroad of the Chicago Junction Railroad Company ran in an east and west direction at Indiana Avenue in Chicago. The transit company operated its railroad in a general north and south direction and when it reached Indiana Avenue coming from the north, ran easterly, 1743 feet, and thence in a southerly direction. The easterly part of the property of the Junction Railroad Company terminated at Indiana Avenue, the east end of this 1743 feet, while the Stockyards Branch of the Chicago Junction Railroad Company operating west of the transit company lines had its beginning at the west end of this 1743 feet. Thus, the railroad company had no track or right-of-way for a space of 1743 feet between the easterly end known as the Kenwood Branch, and the westerly end known as the Stockyards Branch. By virtue of a lease made in 1903 the transit company operated its cars over the property of the railroad company, and used its own track for 1743 feet as the connecting link between the two separate parts of the Junction system.

The transit company became bankrupt, and the United State District Court appointed Fallon and others, trustees, to operate the property under section 77b of the Bankruptcy Act. The transit company claimed it operated the junction property under its lease at a loss, and the district court ordered and directed the trustees to disaffirm the lease, and thereafter the Chicago Junction Railroad Company elected to operate its own property, and filed the first above-mentioned petition with the commission to obtain a certificate of convenience and necessity to operate as a common carrier. Since the railroad company had no rights over the 1743 feet of transit company property it filed the second petition to require the transit company to permit the railroad company to have the joint use with the transit com-

pany of the 1743 feet of tracks. Both petitions were allowed and orders entered accordingly. Although such orders were entered by the commission in 1943 and 1945, respectively, neither has been in actual effect for various reasons, among which is the fact that the Chicago Junction Railroad Company has no cars, no electrical power, no maintenance equipment, terminal facilities, or operating personnel. When these orders were confirmed by the circuit court the appeal to this court followed. The causes have been consolidated for hearing and opinion.

Each party makes several contentions. Those upon the part of the appellant Authority include the claim that the Commerce Commission had no jurisdiction to enforce the order against it because it is a municipal corporation, and by statute is exempted from regulation by the Commerce Commission. Also, the Chicago Junction Railroad Company had no franchise from the city of Chicago to operate, and, in fact, had no facilities for operating a railway, and hence is not a public utility under the law. Also, if the commission has jurisdiction to enter the orders, the same are uncertain, incomplete, and not based upon findings of fact; that the order to use the 1743 feet is not based upon a statute, because the railroad is not a crossing or a connecting carrier and is not entitled to use the terminal facilities of said appellant. Other claims are made, but probably included within the above objections.

On the other hand, the appellee Commerce Commission claims that it has jurisdiction to enter the orders allowing the petitions because they are not prohibited by the statute creating the Chicago Transit Authority, and also contends that even though appellant Authority is exempt from the jurisdiction of the Commerce Commission, still, the appellant Authority purchased the property of the Chicago Rapid Transit Company, which was subject to the orders of the commission, while these proceedings were pending, and

therefore was bound by such orders the same as its vendor could have been bound.

There is a further contention made by appellee that the order of sale and the bill of sale of the property of the Chicago Rapid Transit Company were made subject to certain easements, and that the rights acquired by the Chicago Junction Railroad Company by reason of the orders made by the commission were such rights as come within the exceptions mentioned in the order and deed of assignment.

The statute known as the Metropolitan Transit Authority Act, enacted April 12, 1945, (Laws of 1945, p. 1171,) created the Chicago Transit Authority as a municipal corporation. We upheld the validity of this act as an independent, separate, complete act in *People* v. *Chicago Transit Authority*, 392 Ill. 77. In that case every conceivable objection as to its constitutionality was raised and argued, and the validity of all of its provisions settled beyond doubt.

On the same day the Metropolitan Transit Authority Act was enacted the legislature enacted another act amending section 10 of the Public Utilities Act, (Ill. Rev. Stat. 1945, chap. 111⅔, par. 10,) exempting from control and regulation of the Commerce Commission public utilities owned and operated by any political subdivision, or by a municipal corporation of the State. Section 3 of the Metropolitan Transit Authority Act provides as follows: "All the territory in the County of Cook, State of Illinois, lying east of the east line of Range Eleven, East of the Third Principal Meridian of the United States Government Survey is hereby created a political subdivision, body politic and municipal corporation under the name of Chicago Transit Authority." (Laws of 1945, p. 1171.) Section 10 of the Public Utilities Act, as amended in 1945, provides: "The term 'public utility,' when used in this Act, means and includes every corporation, * * * (except, however, such public utilities as are or may hereafter be owned and oper-

ated by any political subdivision or municipal corporation of this State, or owned by such political subdivision or municipal corporation and operated by any of its lessees or operating agents, * * *)." Laws of 1945, p. 1198.

Clearly, the Commerce Commission has no jurisdiction over the Chicago Transit Authority as a municipal corporation, unless the orders entered come within some exception contained in the act. Appellee claims such exception is to be found in section 36 of the Authority Act, which reads: "In case the Authority acquires the plant, equipment, property and rights in property of any public utility used or useful in the operation of a transportation system, the Illinois Commerce Commission shall transfer and deliver to the Board, upon its demand in writing, all books, papers and records in control of said Commission affecting such public utility exclusively." Ill. Rev. Stat. 1945, chap. 111⅔, par. 336.

It will be noted this section requires the Commerce Commission to turn over all books and records affecting a utility purchased by the Authority. In this section where the term "such public utility" is used it has reference to the utility purchased. In construing section 36 appellee omits its subject matter, "property of a utility purchased and used in its transportation system." When the section is so read the reference is to books affecting exclusively the purchased utility that must be surrendered, which affords no hint that jurisdiction is given the commission over the Transit Authority operations because such books might possibly be owned by, or in the possession of, a carrier operating jointly some other system. Moreover, the Authority is given power by section 9 to enter into joint use of property of another utility without any indication that it thereby submits itself to the jurisdiction of the commission.

The contention is certainly without application in the present suit unless a purchase of the Chicago Junction Rail-

road Company property is made, when all reason for commission control ceases. The language of section 36 is not susceptible to the construction that the Commerce Commission retains control over the acts of the Authority merely because an attempt is made to compel a joint connection with a separate railway system.

Appellee also contends that the orders of the commission are binding upon appellant because it had jurisdiction of Chicago Rapid Transit Company to enter them, and that such orders had the effect of creating a right of way or easement in favor of Junction Railroad Company, which survived the sale of the Transit Company property, even though the statute expressly exempts the Authority from control by the commission. Appellee also falls back upon the language in the decree and in the trustee's deed of conveyance, as follows: "Free and clear of any and all claims of the debtor * * * except (3) easements, rights of way, rights of entry, reversions, possibilities of reverter, covenants of record, licenses, building restrictions and leases * * *" as authority indicating that the commission's power of regulation is still binding upon appellant Authority.

Appellee claims that the order of the commission permitting Junction Railroad Company a joint use of 1743 feet of track of the Chicago Rapid Transit Company constitutes a right of way and may still be used by the Junction, not only because it constitutes property not included in the order and deed of sale, but also because "easements and rights of way" are excepted in the deed of conveyance. The certificate of the commission is constantly referred to as constituting the grant of a right of way. It is elementary that a right of way is one kind of an easement, and is also an incorporeal hereditament. (2 Blackstone, 35; *Tallman* v. *Eastern Illinois and Peoria Railroad Co.* 379 Ill. 441.) The term easement is the broader term since it includes other charges upon real estate than "rights of

way." However, it is settled by authorities from the earliest times that all easements must be created by prescription or by grant from the owner. *Lang* v. *Dupuis,* 382 Ill. 101; *Chicago Title and Trust Co.* v. *Wabash-Randolph Corp.* 384 Ill. 78.

The Chicago Rapid Transit Company never executed a grant of a right of way to Junction Railroad Company, and certainly the latter has never acquired any prescriptive right to use the track in question, since it has never been in a condition with regard to equipment, where it could occupy or possess the property involved, so as to even start a prescriptive period. We do not understand that Junction claims by grant or prescription, but that appellee claims its order either created a right or charge upon the property of Chicago Rapid Transit Company, which was not transferred by deed or decree of court, but will remain a charge upon the property even after sale, and the property may be used jointly by Junction with the purchaser. The right or interest claimed by Junction was not created by Chicago Rapid Transit but, if it exists, by order of the commission. The Public Utilities Act does not confer any authority upon the Commission to transfer part of the property of one utility for the benefit of another, and the claim of Junction being solely based upon the order of the commission, which conveys no property rights, (*Chicago Railways Co.* v. *Commerce Com. ex rel. Chicago Motor Coach Co.* 336 Ill. 51,) nothing remains in the nature of a conveyance to sustain this contention of appellee.

It is asserted also that the order of court and the deed executed pursuant thereto did not purport to free the trustee's property of the effect of the commission's order. This contention is unfounded because the deed conveys "free and clear," with the exception above noted. These exceptions were specifically set out in four different categories, none of which included claims arising from a certificate of convenience and necessity in favor of Junction.

The contention that the court could have specifically cut off any claim of joint use by Junction but did not do so, except as stated above, raises some interesting questions.

First, the properties of the Chicago Rapid Transit Company were in the possession of the United States District Court through the trustees appointed by it. The legal position of a trustee under the Bankruptcy Act is quite similar to that of a receiver. It is settled that the order of the court authorizing a sale of property in its custody controls the rights of the purchaser. If it is sold free and clear the purchaser obtains all the title free of liens. It is clear of common claims and subject only to the liens or deeds fixed in the order of sale. (45 Am. Jur. 313; *Houston & Texas Central Railway Co.* v. *Crawford,* 88 Tex. 277, 53 A.S.R. 752; *Olcott* v. *Headrick,* 141 U. S. 543, 35 L. ed. 851.) In the instant case the conveyance by the trustee was free of all mortgages and liens, with exceptions as to taxes and certain other enumerated claims, of which only "easements" or "rights of way" are relied upon by appellees, which, as pointed out above, is insufficient. Second, it is also to be observed that when property is in the control and custody of a court, it will allow an interested party to intervene and will take measures to prevent any abuse of the court's process and powers. *Wightman* v. *Evanston Yaryan Co.* 217 Ill. 371; *French* v. *Gapen,* 105 U. S. 509.

In this case there is nothing in the deed or evidence which indicates the United States District Court required its trustee to sell his property subject to anything other than the matter specifically excepted in the order and deed of conveyance. Inherently the position of appellee cannot be maintained. The commission entered an order within its power. In the meantime a court has sold the same property to a municipal corporation over which the commission has no power, and hence the force of its order has abated because one of the parties is no longer subject to the same. It would make the order of the commission

superior to a statute were it to be enforced against a municipality which had purchased from a private utility, particularly when there is no vested property right in an order of the commission.

There is no vested right in the continuance of a law. (*People ex rel. Eitel* v. *Lindheimer,* 371 Ill. 367,) and it has been held many times that where the legislature has changed the law pending an appeal the case must be disposed of by the reviewing court under the law as it then exists, and not as it was when judgment was entered in the trial court. (*People ex rel. Toman* v. *Mercil & Sons Plating Co.* 378 Ill. 142.) The case under consideration is a continuance of the case heard in the trial court under provisions of the Civil Practice Act. The order of the commission, to be effective, required a utility that exists and is subject to its jurisdiction. When that utility ceased to exist or to control the property involved, the order ceased to have effect. But, further, when another utility not subject to the control of the commission acquires the property, the order would be unenforcible because of lack of power in the commission. It would indeed be a legal paradox that the regulation of a utility under the jurisdiction of the commission could survive its legal death, and attach to the purchaser of its property, a municipal corporation exempted by law from regulation by the commission. The orders are ineffective to control the use of the property of the Chicago Transit Authority.

The position of appellee is directly opposed to the power given to the Chicago Transit Authority by section 10 of the act, wherein it is given the power to relocate public utilities and appliances occupying and using the same streets. If the Chicago Junction Railroad Company has no right to use the tracks of "The Authority" under this order, as we have above indicated, no occasion exists for the exercise of the power contained in section 10; but if, as ap-

pellee claims, a right of use in favor of Junction of some sort exists, section 10 grants the authority and power to "The Authority" to relocate or remove the same, either temporarily or for the balance of the period of the grant, license or purchase. The result is, in either alternative, the Commerce Commission has no jurisdiction of any kind over the Chicago Transit Authority.

Another point suggested by appellant Authority is that there is no showing that the Chicago Junction Railroad Company is a public utility, because it has no cars, equipment, electrical power, or terminals to operate a railway facility, and that the permit to become a public utility does not make it one unless it has the ability to so operate, and this, together with the contention that it would necessarily have to use terminal facilities until it acquired some of its own, would be in violation of section 44 of the Public Utilities Act, which prohibits the Commerce Commission from requiring one common carrier to give the use of its terminal° facilities to another common carrier engaged in the same business.

These objections, and others suggested heretofore, are substantial but need not be discussed further because we are of the opinion that after the acquisition of the property of the Chicago Rapid Transit Company by the Chicago Transit Authority, the Commerce Commission lost jurisdiction over the property of Chicago Rapid Transit Company, after the Transit Authority purchased the property, to enforce any of the orders that it had jurisdiction to enter.

This is so clearly manifested by the language of the Metropolitan Transit Authority Act, and the changes made by the amendments to the Public Utilities Act exempting municipal corporations from its jurisdiction, that discussion of the further points so ably set forth in the briefs is not only unnecessary but would add nothing of value to this opinion.

The order of the circuit court of Cook County is reversed and the cause remanded, with directions to vacate the order entered in No. 30436, permitting the use of appellants' track and facilities, and to modify such portions of the order in No. 30437 as are not in accordance with the views expressed in this opinion.

*Reversed and remanded, with directions.*