(No. 36508.—

NICK PALANGIO *et al.*, Appellants, *vs.* THE CITY OF CHICAGO *et al.*, Appellees.

*Opinion filed January 23, 1962.*

MacLEISH, SPRAY, PRICE & UNDERWOOD, of Chicago, (ROBERT S. CUSHMAN, and EDWARD S. SILBER, of counsel,) for appellants.

JOHN C. MELANIPHY, Corporation Counsel, of Chicago, (SYDNEY R. DREBIN and ROBERT J. COLLINS, Assistant Corporation Counsel, of counsel,) for appellees.

Mr. JUSTICE DAILY delivered the opinion of the court:

Plaintiffs, Nick Palangio and Doughboy Industries, Inc., filed a declaratory judgment action in the circuit court of

Cook County to determine the applicability and constitutionality of the Chicago Private Residential Swimming Pool Ordinance. Defendants, the city of Chicago and George L. Ramsey, its building commissioner, in turn asked that Doughboy Industries, Inc. be enjoined from advertising or selling the plastic, portable-type swimming pools manufactured by it and that Palangio be enjoined from using such a pool which he had previously installed in the back yard of his home at 3839 West 83rd Place, Chicago. Upon the recommendations of the master in chancery, the circuit court found the ordinance applicable at least in part to such portable-type pools; that insofar as it was applicable the ordinance was constitutional; that Palangio should be enjoined from using his pool until he complies with the applicable provisions of the ordinance; but that Doughboy Industries, Inc. should not be enjoined from advertising or selling its products. From a decree entered in accordance with these findings, plaintiffs appeal directly to this court since a constitutional question is involved.

The pool which is the subject of this litigation was manufactured by Doughboy Industries, Inc. and purchased by Palangio from a Chicago dealer. When received it was packed in two cardboard boxes, each approximately two feet in length, width, and thickness, and was composed of three separate parts. The first part consisted of several pieces of interlocking metal tubing which was assembled to form the exterior of the pool. The second part was a metal sheet having a width equal to the depth of the pool and a length equal to its circumference. The third part was a plastic bag or liner which was placed inside the metal frame and held the water. The pool was round, weighed more than three hundred pounds, had a depth of four feet, a diameter of twenty-three feet, and held 10,783 gallons of water. It was filled by a garden hose, was emptied through the basement drain in Palangio's house, and was one of a

series designed by Doughboy Industries, Inc. for installation upon the surface of the ground.

In addition to the pool itself, Palangio also purchased a surface skimmer for cleaning foreign objects from the top of the water, a vacuum cleaner for cleaning the bottom of the pool, a plastic pool cover, a removable ladder for access to the pool from the ground, a filter and water circulating system, and a testing kit for determining the amount of chlorine in the water. Except for the electrical wiring, Palangio installed the pool and equipment himself in accordance with the manufacturer's manuals. He did not, however, either request or receive a city permit as required by the swimming pool ordinance and, as a result, he was subsequently notified by the Chicago building commissioner to immediately remove the structure upon penalty of fine. The present litigation followed.

Upon hearing before the master, Palangio testified that except for adding "make-up" water from time to time, the same water remains in the pool throughout the summer and at the close of the swimming season the pool is dismantled and stored in the basement of his house. He stated the pool was used solely by him, his wife, their son and invited guests and that no one was allowed in the pool unless he or his wife were present. When not in use, the pool was covered and the ladder was stored in the garage. The wife, Helen Palangio, and Richard Johnson, a next-door neighbor, corroborated this account.

Another next-door neighbor, James G. Stewart, testified however that the pool was improperly filtered, that swimming parties continued until as late as 11 :30 P.M., that the distance between his property and the pool was only sixty-five inches and water which splashed from the pool ran upon his property, that by reason of the pool's elevation rain water also drained upon the Stewart lot ruining his yard and lawn, that mosquitoes were attracted by the pool,

that the neighborhood children played about the pool without adult supervision, that the pool was upon occasion left uncovered when not in use, and that as initially constructed a 220 volt electric wire overhung the pool.

Various officials of Doughboy Industries, Inc. related the safety features of the pool, such as being entirely above ground, having a removable ladder, being capable of storage during the winter months, and its vertical walls which makes access to the pool without a ladder almost impossible. They stated that pools of this type, being above the ground, are cleaner than excavated pools since dirt, leaves and other debris cannot so readily blow into the water and that although almost ten thousand such pools had been sold during the preceding five-year period, not one drowning therein had occurred. It was also their opinion that the filtration system met all health requirements but that the Chicago residential swimming ordinance as a practical matter prohibited the installation and maintenance of such pools.

Certain city officials, on the other hand, believed the pool did not give satisfactory protection from the health and safety standpoint, in that the filtration system was inadequate and the chlorine tests incomplete, and that if the garden hose used to fill the pool were submerged the possibility existed that the pool water could be drawn back into the city's water supply. They indicated that municipal supervision was necessary to insure compliance with basic health and safety practices.

The Chicago Private Residential Swimming Pool Ordinance is a part of the Chicago Building Code and provides for the installation, operation, maintenance, and inspection of all private residential pools within the municipality. It makes it unlawful to construct or alter such a pool without first having the plans for location, construction, and use approved by the board of health, the department of water and sewers, and the building department, and without having secured permits from the latter two departments. By the

terms of the ordinance, pools must be of the filtered recirculation type; have impervious walls and floors; comply in structural design with other portions of the building code; be entirely surrounded by a walk and enclosed by a five-foot high fence; have two or more means of egress constructed of nonslip material; be equipped with overflow gutters and drains; have uniform recirculation by means of regularly spaced inlets and provision for adding of makeup water without physical connection between the supply and the pool; provide outlets so as to empty the pool at a rate not exceeding 250 gallons per minute without direct connection to the sewer; have lint catchers, filters, and disinfecting equipment in connection with the recirculation system; be capable of recirculating the entire water volume within a six-hour period; and have all electrical equipment installed in compliance with the requirements of the building code and without any line closer than 15 feet to the pool. The ordinance also provides that a skilled swimmer shall be present at all times the pool is in use, that specified lifesaving equipment be available, that such pools may be used only between June 1 and September 15th of each year and from the hours of 9 A.M. to 10 P.M., and that the board of health shall periodically inspect such pools to determine whether the health, safety, and sanitation requirements are being complied with.

In prosecuting their appeal to this court, plaintiffs contend that (1) the ordinance does not apply to plastic portable swimming pools, (2) if the ordinance is applicable as a whole it is unconstitutional, and (3) if the ordinance is applicable only in part the trial court erred in failing to determine which provisions apply to plaintiffs' pool and which do not.

In support of their first contention, plaintiffs point out that the ordinance is a part of the Chicago Building Code and contains repeated references to various building requirements. They argue that a portable pool could not be

considered a "building" but that the ordinance was intended to apply only to permanent, excavated pools requiring such construction planning. They also insist that since no gallonage or size requirement is contained in the ordinance, to apply its provisions to other than excavated pools would have the absurd result of including any receptacle filled with water to the specified depth without regard to its size. The ordinance states as follows: "The term 'private residential swimming pool' is hereby defined as a receptacle for water, or an artificial pool of water having a depth at any point of more than two feet, intended for the purpose of immersion or partial immersion therein of human beings, and including all appurtenant equipment, constructed, installed, and maintained *in or above the ground* outside of a building used for a single family dwelling unit." (Emphasis supplied.) From this language it is clear the city council envisioned the construction of pools both in and above the ground and intended the ordinance to apply in either case. The mere fact that the particular ordinance was included as a part of the building code does not indicate the contrary, and neither does the failure to specify a size limitation. The purpose of regulatory ordinances of this kind is to protect the general public, and it may well be that the city council felt a limitation only as to water depth was sufficient for this purpose.

Plaintiffs' claim of unconstitutionality is based upon the fact that the swimming pool ordinance refers to other sections of the building code dealing with such matters as foundations, concrete construction, and minimum design loads and contains other requirements, such as overflow gutters, which could be complied with only by the builders of permanent-type pools. Plaintiffs argue that if the ordinance is applicable as a whole to portable as well as permanent-type pools, and since it is impossible for the former to comply, the ordinance has the effect of prohibiting the construction or sale of portable pools in Chicago, thus de-

priving plaintiffs of liberty and property without due process of law and conferring a special privilege upon the sellers and users of permanent-type pools contrary to the equal protection guaranteed by the State and Federal constitutions.

Of course, a municipality may, under the police powers conferred by the legislature, impose such restrictions upon the individual property owner as are reasonably necessary for the protection of public health, safety, or welfare, (*Trust Company of Chicago* v. *City of Chicago,* 408 Ill. 91,) including the regulation of private swimming pools. (*Mason* v. *Mayor and Council of Borough of Hillsdale,* 147 A.2d 604, 53 N.J. Super. 500.) While the courts will not pass upon the wisdom of the legislative act, they will determine whether such act is reasonably calculated to accomplish such ends, and if it is not, the unnecessary restrictions will be removed. (*People* v. *Weiner,* 271 Ill. 74.) In all such cases, however, a presumption favors the validity of the ordinance, (*Dorwart* v. *City of Jacksonville,* 333 Ill. 143; *Honeck* v. *County of Cook,* 12 Ill.2d 257,) and the burden of proving otherwise rests with the party attacking the ordinance. *Herman* v. *Village of Hillside,* 15 Ill.2d 396; *Zweifel Manufacturing Corp.* v. *City of Peoria,* 11 Ill.2d 489.

While it is true that the ordinance in question states that the structural design and construction of pools shall comply with chapters 68 through 76 of the Chicago Building Code, and although such portions of the building code are not a part of the record in this proceeding, we are advised by plaintiffs' brief that they refer to such matters as minimum design loads, methods and tests, foundations, concrete construction, and masonry construction. We are also advised that certain of the other ordinance provisions, such as those dealing with overflow gutters and rapid pressure filters, could not be complied with by the owner of a portable-type pool. It has not been shown, however, that the

city of Chicago intends to cast any unreasonable burden upon the owners of portable-type pools or to demand compliance by them with requirements applicable only to permanent pools. As the ordinance states, it applies to all private pools, both in and above the ground, and its requirements must necessarily provide adequate safeguards as to both. Nevertheless, this does not mean that every provision contained therein must or would be strictly applied to every pool regardless of type. Rather, it is reasonable to assume that an owner will be required to comply only with those provisions applicable to his particular type of pool. If this is not the situation, and if unreasonable restrictions are placed upon certain owners, the courts will not hesitate to act.

However, in the present case, plaintiffs have failed to prove the enforcement of any unreasonable provisions by the municipal authorities. To the contrary they have consistently refused to apply for a permit or to otherwise determine which of the ordinance provisions the authorities may deem applicable to a portable-type pool. Certainly, as the lower court found, the requiring of a permit and the enforcing of the other provisions relevant to a portable pool are in the interest of public health, safety, and welfare. Until such time as plaintiffs are subjected to restrictions not reasonably calculated to this end, they have been denied neither due process nor equal protection of the law.

Finally, plaintiffs complain because the lower court did not ascertain which ordinance provisions apply to a portable pool and which do not. We have repeatedly held that a court will not constitute itself a zoning commission to pass upon matters which should initially be determined by a legislative or administrative body. (*Downey* v. *Grimshaw*, 410 Ill. 21.) The municipal authorities, unlike this court, have before them the Chicago Building Code to which reference is made in the swimming pool ordinance, and it is for them, upon application for permit by an interested party,

to decide which provisions apply to a particular type pool. If the authorities refuse to make such a determination, or if they make an unreasonable determination, then the aggrieved party may seek the protection of the court. Since, in the present case, plaintiffs made no attempt whatsoever to acquire such a decision from the proper administrative bodies, the lower court did not err in refusing to pass upon this question.

For the reasons stated, the decree of the circuit court of Cook County is affirmed.

*Decree affirmed.*