**The People of the State of Illinois on the Relation of Isak Gustafson, Western National Bank of Cicero, as Trustee Under Trust 2034, and Midlothian Terrace Apartments, Inc., an Illinois Corporation, Plaintiffs-Appellees, v. City of Calumet City and John Daisy, Defendants-Appellants.**

**Gen. No. 52,642.**

First District, Third Division.

October 17, 1968.

Posanski, Johannsen, Krohn & Jacobs, of Chicago, for appellants.

Arthur B. Sachs, of Chicago (M. Prial Curran, of counsel), for appellees.

MR. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court.

The plaintiffs, owners of unimproved real estate in the City of Calumet City, filed suit for a writ of mandamus (Ill Rev Stats 1965, c 87, § 1 et seq.) to compel the defendant city and its building commissioner to issue building permits to them. They alleged that under a 1947 zoning ordinance, their parcels of real estate were located in a class "D" residence zone. This type of district permitted "Dwellings arranged and designed for use of more than one family." The plaintiffs claimed that in reliance upon the zoning regulation, they had purchased real es-

tate within the class "D" district and, after applying for and obtaining building permits, commenced to develop the property with multifamily dwellings.

Later, in the Spring of 1967, one of the plaintiffs applied for additional permits, but the applications were denied by the building commissioner on the ground that a petition had been filed with the board of zoning appeals to amend the zoning regulation of the plaintiffs' property and the property in its immediate vicinity. The particular plaintiff then filed a mandamus petition asking the Circuit Court to direct the city and the commissioner to issue the permits. In July 1967 an order for such a writ was entered by the court. The order was not appealed and the permits were issued.

Thereafter, on August 3, 1967, the plaintiffs applied for more permits in order to construct one eight-flat and some three and four-flat buildings. Although the construction of such buildings was permitted under the existing class "D" zoning regulation, the commissioner refused to issue the permits. As a result, the plaintiffs filed another petition for a writ of mandamus. This petition—which is the present suit—was filed on August 10th.

On August 22nd the defendants answered the petition. They asserted that on August 21st the City Council of Calumet City adopted an ordinance which changed the zoning classification of the area in which the plaintiffs' property was located from class "D" to class "B," and that construction of multifamily dwellings was not permitted in a class "B" area.

The court ruled for the plaintiffs because:

> ". . . at the time of . . . [their] application for building permits and at the time of filing the Petition herein for Mandamus, [they] had a clear legal right under the existing zoning regulations for the issuance of building permits . . . and the ordinance passed

on August 21, 1967 . . . cannot abrogate the rights of the Petitioners."

The writ of mandamus was ordered on September 1, 1967.

In late September new counsel entered an appearance for the defendants. A post-trial motion was filed which sought to create defenses to the action which had neither been pleaded in the answer nor advanced at the trial. One of these was that a nonplaintiff had signed the applications for the building permits. Another was that the applications did not comply with the code requirements of the city in that verified specifications or plans in duplicate were not attached to the applications. The post-trial motion also elaborated on the basis of the zoning ordinance amendment, explaining that the municipal facilities such as water, sewer and recreation—in an area allegedly developed primarily for single-family dwellings—were not adequate to support a large number of multiple family dwellings. The post-trial motion was denied.

On appeal the defendants contend that the mandamus petition was insufficient to sustain the relief granted and that the plaintiffs had no vested right in the continuation of the existing ordinance.

The first contention was not properly raised in the trial court and need not be considered. The arguments that the plaintiffs did not apply for the permits and that the applications were not accompanied by verified specifications or plans in duplicate were raised for the first time in the post-trial motion wherein the defendants sought leave to amend their answer. One purpose of a post-trial motion is to give a trial court an opportunity to correct its errors. The court could not err on matters never called to its attention. Moreover, the pleadings could not be amended after judgment to raise the new issues. A complaint or answer can be amended after judgment only to conform them to the proof. Ill Rev Stats 1965, c 110, § 46(3) ; People ex rel. Tinkoff v. Northwestern Uni-

versity, 333 Ill App 224, 77 NE2d 345 (1947). In addition to these factors, the defendants' answer admitted the allegation in the petition that the plaintiffs applied for the permits.

As to the second contention, the defendants argue that the amended ordinance was in effect ten days prior to the hearing in court; that there is no vested right in the continuance of a law; that where a law has been changed pending an appeal a case must be disposed of by the court upon the law as it then exists, and that since the amended ordinance was not shown to be void, the court should have followed the ordinance as amended. The defendants concede that they do not have a right to arbitrarily refuse or unreasonably delay the issuance of a permit but contend that the issuance may be delayed when an ordinance is under consideration which would prohibit the issuance of the permit.

■ Such a delay was approved in Chicago Title & Trust Co. v. Village of Palatine, 22 Ill App2d 264, 160 NE 2d 697 (1959). In Palatine, the plaintiffs applied for a permit to construct a gasoline station—a use permissible under the existing zoning ordinance. About three weeks later the village passed an ordinance which prohibited such use of the property. On the basis of the amended ordinance the building commissioner refused to grant the application. The plaintiffs filed a petition for a writ of mandamus contending that the rights of the parties became fixed on the date they applied for the permit and that the subsequent ordinance had no bearing upon their right to its issuance. The writ was allowed. On Appeal by the village, this court reversed. We noted that the amended ordinance had been under consideration by the village zoning board prior to the plaintiffs' application, and held that a permit may be delayed when an amendment to an ordinance is under consideration which would

12

prohibit the permit, and that if the amendment is passed the permit may be refused.

The principles mentioned above are applicable to the present case. In this case a petition had been filed to amend the zoning ordinance prior to the plaintiffs' application for the permits in question. The petition, filed in the Spring of 1967 or before, sought to rezone the area in which the plaintiffs' property was located. The petition was under consideration by the zoning board and had not been disposed of when the plaintiffs filed their application on August 3, 1967. Less than three weeks later a special meeting of the city council was called to resolve the matter and the zoning ordinance was amended despite the contrary recommendation of the zoning board. The amendment was not shown to be void; the time between the request for the permits and the amendment to the ordinance was not unreasonable and the reason for the delay was not arbitrary.

 However, the right of a municipality to reject a previously-applied-for permit on the ground of a subsequent change in zoning is subject to a well-recognized exception:

> ". . . any substantial change of position, expenditures, or incurrence of obligations occurring under a building permit or in reliance upon the probability of its issuance is sufficient to create a right in the permittee and entitles him to complete the construction and use the premises for the purposes originally authorized irrespective of a subsequent zoning or change in zoning classification." Fifteen Fifty North State Building Corp. v. City of Chicago, 15 Ill2d 408, 155 NE2d 97 (1959) ; People ex rel. National Bank of Austin v. Cook County, 56 Ill App2d 436, 206 NE 2d 441 (1965).

The remaining issue and the crux of the case as we see it, is whether the plaintiffs come within this exception. In their mandamus petition they alleged that in reliance upon the zoning regulations, they purchased the property and embarked upon a program of developing it with multifamily buildings. They further alleged that in the process they expended a substantial amount of money for preliminary costs, promotion and advertising. No proof of their expenditures or incurrence of obligations in reliance on the continuation of the existing ordinance was presented at the hearing. It is their position that there was no need for such proof because of a judicial admission made by the defendants.

At the hearing the plaintiffs' attorney told the court that his witnesses were ready to testify but he summarized the facts and the history of the controversy in order, as he said, "to save a lot of your time." His statement focused on the events of the zoning change: the application for the permits, their denial, a special council meeting and the adoption of the amendment contrary to the recommendations of the zoning board. He ended his statement with these words:

> "I truly question, with this summary . . . and upon the answer itself, admitting that at the time we filed our permits the law was a 'D' classification permitting this, that we really need to waste your Honor's time with a presentation of evidence . . . because I think based on the law alone and the admitted facts we are entitled to it [the mandamus writ]."

It is apparent from this conclusion that the attorney thought that the plaintiffs had a vested right in the original ordinance irrespective of the later amendment. When he referred to "the admitted facts," he meant the circumstances preceding the amendment—facts which had

14

been admitted in the defendants' answer. He could not have meant the plaintiffs' expenditures and obligations for the allegation pertaining to them had not been admitted in the answer. The answer stated that the defendants had insufficient knowledge or information to form a belief as to this allegation, that they could neither admit nor deny it but demanded strict proof.

The judge responded that he was familiar with the case because he had handled one portion of it (the mandamus order issued in the Spring of 1967). He commented on the events surrounding the zoning amendment and also on the purchase of the property and its development. He observed that irreparable damage would be done to the builder who bought the property in reliance on a particular classification if the city were allowed to pass a retroactive ordinance after an application was made for building permits and a lawsuit filed. After stating, "I will have the writ of mandamus issued," the judge asked a question which led to what is claimed to be the binding admission which justified the failure to hear evidence:

| The Court: | "[T]here is no dispute as to facts are [sic] there?" |
| Defendants' Attorney: | "Well, Judge, Mr. Sachs [plaintiffs' attorney] made his opening statement. I assume he was discussing his argument rather than his testimony." |
| The Court: | "I read your answer, and in your answer, you don't deny these things." |
| Defendants' Attorney: | "We don't deny any of the facts as alleged, because these are the circumstances." |

The defense attorney's admission can be interpreted two ways: it can be taken as a retrospective reference to those

allegations admitted in the defendants' answer or it can be taken as a contemporaneous admission of every factual allegation in the plaintiffs' petition, notwithstanding what was said in the answer. The first interpretation is supported by the attorney's reference to the plaintiffs' opening statement and by his reply to the judge's observation that the answer had been read and "these things" were undenied. The attorney's admission could well have been limited to the circumstances asserted in the opening statement apropros to the zoning change and to the "things" he knew were undenied in the answer. On the other hand, the second interpretation is supported by the fact that the judge had spoken of the hardship suffered by the builder before asking if there was a dispute as to the facts, and by the attorney's generalization: "We don't deny *any* of the facts as alleged."

Although it appears that the court was under the impression that all allegations were undenied including the plaintiffs' expenditure of substantial funds, and had announced his decision for the plaintiffs before the admission was made—the admission, if considered as applying to every allegation, would substitute for proof and would cure the error resulting from the absence of proof. The admission, however, was ambiguous and it would not be fair to the defendants to bind them by it.

██ The extraordinary writ of mandamus must be predicated on the clear right of the petitioner to the relief requested. Houswerth v. Seidel, 47 Ill App2d 112, 197 NE2d 271 (1964). Since the admission permits conflicting inferences which are equally reasonable, the cause will be remanded for trial on the issue of the plaintiffs' expenditures and obligations in relying upon the original ordinance. If they can prove that the obligations they incurred and the expenditures they made come within the standards set by our courts (see e. g., People ex rel. Nat. Bank v. Cook County, 56 Ill App2d 436, 206 NE2d 441

16

(1965)) the writ should issue. If they cannot, they are not entitled to the writ because their other allegations, although admitted, are not sufficient to justify its issuance.

Reversed and remanded with directions.

SCHWARTZ and SULLIVAN, JJ., concur.