Margaret H. Brown, Plaintiff-Appellee, v. City of Joliet, a Municipal Corporation, Maurice Berlinsky, as Mayor, and Sam Chuk, Richard Curran, Ned Grabavoy, William Wilson, Earl J. D'Amico, and Eugene F. Duff, as City Councilmen of City of Joliet, Defendants-Appellants.

Gen. No. 68–76.

Third District.

April 15, 1969.

Mullen & Harmon, of Joliet, for appellants.

Schenk, Dimas and Brown, of Joliet, for appellee.

ALLOY, J.

Margaret H. Brown, plaintiff, as the owner of a tract of land in a residential area of Joliet, Illinois, sought to subdivide the tract into lots for development into home sites. In November of 1965 she filed a preliminary plat of the tract with the Planning Commission which she later altered by request and filed again in May of

1966. On May 25, 1966, the Planning Commission of the City of Joliet, following a hearing in regard to the approval of the plat, suggested changes which were made by the plaintiff. A further hearing was held on July 28, 1966, and the Planning Commission then recommended that the approval of the plat be denied. While the plat satisfied almost all of the requirements of the City of Joliet for recording of such plat, the Planning Commission concluded "however, the problem of drainage still exists." In reasons assigned for denying acceptance of the plat, the Planning Commission specifically found that land of the objectors lying to the south of the area in question is subject to flooding problems periodically and that development of this area would only intensify or increase the threat of flooding problems, until such time as adequate storm sewers are installed in the area. It was pointed out by the Commission that the only existing storm drains in the area empty into combination storm and sanitary sewers which become overloaded during moderately heavy rainfall and that sewage backup and basement flooding results. The Commission had concluded that improvement of *any* of the lots as proposed would intensify the danger to adjacent developed property. The Commission held that the plat should be denied until such time as the storm drain trunklines in Midland Avenue be installed, as shown by the master plan relating to storm sewers or until other acceptable provisions are made for storm water runoff from this property.

Under the terms of 1967 Ill Rev Stats, § 11–12–8 of chapter 24, it is specifically provided that cities may by ordinance provide for the approval of plats and that the cities can require that the proposed plat conform to the official city map and all applicable municipal regulations, including showing proposed locations of sewers and storm drains. The statute provides that corporate authorities are to approve the plat within 60 days

of the filing of the last required document, and then concludes specifically, "if the corporate authorities fail to act upon the final plat within the time prescribed, the applicant may, after giving five days' written notice to the corporate authorities, file a complaint for summary judgment in the Circuit Court and upon showing that the corporate authorities have failed to act within the time prescribed, the court shall enter an order authorizing the Recorder of Deeds to record the plat as finally submitted without the approval of the corporate authorities. A plat so recorded shall have the same force and effect as though that plat had been approved by the corporate authorities."

By its Municipal Code, the City of Joliet provided, with respect to drainage, that "every subdivision shall be provided with storm water sewage or surface drainage system adequate to serve the area being platted and otherwise meeting the approval of the City Engineer. Such sewerage or drainage system shall be designed in the light of advice which the City Engineer shall supply in regard to the method or means of disposing of the storm water off the area being platted."

A later ordinance passed in 1967 provided, with respect to storm drains, that "Every subdivision shall be provided with a storm water or surface drainage system adequate to serve the area being platted and in conformance with the master storm drainage plan of the water shed of which it is a part."

When the preliminary plat was presented to the City Council in August of 1966, the Council passed a motion to table action on the approval of such final plat until an election was held for the formation of a certain water protection district and that "by the election, such district is formed." In September of 1966, plaintiff filed a five-day notice under the Statute and on October 6, 1966, plaintiff filed suit requesting that the plat be recorded without approval of the city authorities and that a writ

233

of mandamus be issued as against the city requiring approval of the plat.

Pursuant to a pretrial conference, plaintiff filed a final plat with the City on March 27, 1967. The final plat was submitted to the Planning Commission which denied approval "for the same reasons that approval of the preliminary plat was denied." On July 11, 1967, the final plat was submitted to the City Council which denied approval of the final plat by passing a motion to concur in the recommendations of the Planning Commission. At the hearing, discovery procedure by both parties disclosed that 44 plats had been approved since 1962, but none of such plats contained specifications for installing storm sewers. There is no showing, however, that the sewer arrangements as to such plats were not adequate or were not in compliance with municipal regulations. The record also discloses that a west side storm sewer plan, which provided for a trunk storm sewer through the area which would benefit the property in question, had been proposed but there had been no action on it by the City Council. There was a showing also that, as a temporary expedient, the City had suggested the construction of a retention basin which would occupy about six of plaintiff's proposed lots.

Upon presentation of the cause, the trial court concluded that no material issue of fact existed and that summary judgment was appropriate. The court concluded that the city was unreasonable in refusing approval of the plat and that plaintiff was deprived of the use of her land unconstitutionally. A writ of mandamus was awarded directing the city to approve the final plat. The city has appealed from such judgment order and writ and seeks reversal of the judgment order and requests that the mandamus writ be quashed.

■■ It is clear that the provisions of the Illinois Statutes authorize cities to pass ordinances which require that before a subdivision plat can be recorded, there

must be a showing on the plat of adequate water drainage for the area platted (1967 Ill Rev Stats, c 24, § 11–12–8). It is clear that, also, under the statute, municipalities may make regulations which must be met before the plat can be filed, including regulations concerning water drainage. There is likewise a presumption in favor of the validity of any such ordinance (Palangio v. City of Chicago, 23 Ill 2d 570, 179 NE2d 663).

In the cause before us, the City of Joliet had a 1962 ordinance which provided that a subdivision must be shown to have "storm water sewage or surface drainage system" adequate to serve the area being platted, and a later ordinance, in 1967, provided that "storm water or surface drainage system" in a proposed subdivision must be adequate to serve the area being platted. Since both of these ordinances contained virtually the same requirement, it is immaterial whether the 1962 or 1967 ordinance applies.

The record discloses that plaintiff made no showing, by her plat or other documents filed with the Planning Commission and the City Council, that she had made adequate provision for drainage of the platted area. It is also apparent from the record that the Planning Commission and the City of Joliet complied with the statute in setting forth the reasons for disapproval of the plat as required by statute, and that the Planning Commission and the City disapproved the plat because of lack of adequate storm drainage facilities.

██ ██ The basic issue is whether the action of the City Council (in determining that plaintiff's plat was not in conformity with the City Ordinance) was a proper exercise of a discretion vested in the City Council under the acts and precedents in this case, so that the writ of mandamus was inappropriate in the present action. Mandamus may not be used to force a City Council to exercise its discretion in a particular manner unless the City Council has abused its discretion (Templeman v. City of Ro-

235

chelle, 52 Ill App2d 201, 201 NE2d 862; People ex rel. Ammann v. Dipper, 392 Ill 38, 63 NE2d 870). If there is any doubt as to the propriety of the exercise of the discretion, the courts favor a denial of a writ of mandamus (MacGregor v. Miller, 324 Ill 113, 118, 154 NE 707). In the MacGregor v. Miller case, supra the court stated that the courts are so careful of encroaching in any manner upon the discretionary powers of public officials, that if any reasonable doubt exists as to the question of discretion or want of discretion, courts will hesitate to interfere. It is likewise basic that before a writ of mandamus should issue, a petitioner must establish every material fact necessary to show the plain duty of the respondent to act as requested, before the courts will interfere. No intendments are indulged in to support the issuance of a writ (People ex rel. Pignatelli v. Ward, 404 Ill 240, at 244, 88 NE2d 461).

██ Relating the foregoing principles to the cause before us, the fundamental question is whether the City Council abused its discretion in refusing to file the plat. The record discloses that there was sufficient evidence at the hearing before the Planning Commission and again when the preliminary and final plats were submitted to the City Council to permit the Council to determine whether or not plaintiff had complied with the City Ordinance with respect to the handling of surface water and drainage. There was a showing in the record of flooding of basements in the adjacent area and a backup of sanitary sewer water along with the storm sewer water as both systems were connected together. It is also apparent that this presented a serious health hazard since it did not take an unusual rain to cause the flooding condition. The evidence disclosed that to allow the development of the plaintiff's area and permit it to be subdivided without adequate provision for drainage of surface water, would increase the drainage problem in

the surrounding areas and would not provide proper drainage for the newly-subdivided area itself.

 In asserting that the ordinance is unfair and unconstitutional as applied to her property, plaintiff has argued that 44 plats had been approved in Joliet in recent years and that none of them required installation of any facilities for taking care of storm water. There was no showing, however, that in any of these 44 previous plats so approved, there was a problem with respect to storm water drainage which was not adequately handled by the existing system or by drainage shown in the plats. The assertions of plaintiff actually are related to the problem which was discussed in City of Decatur v. Chasteen, 19 Ill2d 204, page 210, 166 NE2d 29, where the court says:

"The fact alone that the ordinance may operate to impose burdens or restrictions on the property which would not have existed without the enactment of the ordinance is not determinative of the question of its validity. (Miller Bros. Lumber Co. v. City of Chicago, 414 Ill 162.) The privilege of every citizen to use his property according to his own will is both a liberty and a property right, but these rights are always subordinate to the interests of the public welfare."

It appears from the record that the only benefit to plaintiff is an economic gain from the sale of her lots and possibly the avoidance of an economic loss thereon, whereas the public loss might well result in sewer water backing up in people's homes in the area. The public gain, therefore, in enforcing the ordinance could reasonably have been determined to outweigh plaintiff's loss.

 Plaintiff argues forcefully that the City is attempting, illegally, to condemn a portion of her property due to a condition that was not entirely created by her subdivision. In Pioneer Trust & Savings Bank v. Mount Prospect, 22 Ill2d 375, 379–80, 176 NE2d 799, the court stated:

"We further observed: 'But because the requirement that a plat of subdivision be approved affords an appropriate point of control with respect to costs made necessary by the subdivision, it does not follow that communities may use this point of control to solve all of the problems which they can foresee. The distinction between permissible and forbidden requirements is suggested in Ayres v. The City Council of Los Angeles, 34 Cal2d 31, 207 P2d 1, which indicates that the municipality may require the developer to provide the streets which are required by the activity within the subdivision but can not require him to provide a major thoroughfare, the need for which stems from the total activity of the community.' It is in the light of these basic principles that the reasonableness of the requirement sought to be imposed by the defendant village must be determined. If the requirement is within the statutory grant of power to the municipality and if the burden cast upon the subdivider is specifically and uniquely attributable to his activity, then the requirement is permissible; if not, it is forbidden and amounts to a confiscation of private property in contravention of the constitutional prohibitions rather than reasonable regulation under the police power."

To the same effect is Exchange Nat. Bank of Chicago v. Lake Forest, 40 Ill2d 281, 239 NE2d 819, where the court stated (at page 285):

"It is unquestioned that a municipality appropriately authorized can require compliance with reasonable regulatory conditions preliminary to its approval and recording of plats for the subdivision of lands. And a requirement that a subdivider dedicate land for or even improve streets as a condition to the municipality's acceptance can in appropriate circumstances

238

qualify as reasonable regulation (see Petterson v. City of Naperville, 9 Ill2d 233)."

In that case, the court found that the need for the new public streets was not specifically and uniquely attributable to any activity which would arise from plaintiff's re-subdivision of a 25-acre property into two lots. In the instant case, however, the contention of the plaintiff in this cause that she is being forced to build or provide a storm sewer for the whole general area and not just her platted area, was not sustained by the record. Neither the Planning Commission nor the City Council set forth any requirement that plaintiff construct any specific drains or transit sewers for the benefit of the area. The Council merely refused to approve the plat until the question of storm water drainage was resolved on plaintiff's plat. The storm water problem which would be created in this cause would be uniquely attributable to plaintiff's subdividing and development. It was true that at one time the Council had suggested that plaintiff consider constructing a 170′ x 120′ holding pool which would take up the space of six lots, but this was merely in the form of suggestion and was not made a requirement for having the plat approved. We must, therefore, conclude that the theory of illegal condemnation cannot be applied, reasonably, to the facts in the instant case.

We likewise conclude that the doctrine of estoppel does not apply in the instant case. Neither the City of Joliet nor the Planning Commission nor any officer or officers did anything to lead plaintiff to believe her plat would be recorded and approved. The plat was turned down in the first instance by the Planning Commission and later by the Council and the final plat was rejected by both bodies. There was no showing made that plaintiff did anything in reliance upon the act of the City or any official of the City. Therefore, the suggested doctrine of estoppel as against the municipality would not apply

239

▮▮▮▮▮▮

(Dumond v. City of Mattoon, 60 Ill App2d 83, 89, 207 NE 2d 320).

We must, therefore, conclude that the writ of mandamus was improperly issued in this case. This cause will, therefore, be reversed with directions to the Circuit Court of Will County to quash the writ of mandamus and to allow defendants' motion to strike the complaint for summary judgment.

Reversed and remanded with directions.

STOUDER, P. J. and RYAN, J., concur.