AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, as Trustee, *et al.*, Petitioners-Appellees, *v.* THE CITY OF CHICAGO *et al.*, Respondents-Appellants.

(No. 59780;

First District (1st Division)—April 15, 1974.

Richard L. Curry, Corporation Counsel, of Chicago (William R. Quinlan, Richard F. Friedman, and Jerome A. Siegan, Assistant Corporation Counsel, of counsel), for appellants.

Raymond F. Simon, of Chicago (John J. George, of counsel), for appellees.

Mr. JUSTICE BURKE delivered the opinion of the court:

This action arose as a petition for a writ of mandamus to order the Building Commissioner of the City of Chicago to issue a permit for construction of a 44-story building at 555 East Illinois Street in Chicago. The trial court found that the petitioners were entitled to the permit and ordered that a peremptory writ of mandamus issue directing the respondents to issue the permit. This appeal followed.

The respondents contend that the petitioners have no right to a permit for a project which would violate a comprehensive lakefront land use ordinance publicly announced prior to application for the permit. The petitioners claim they acquired a vested right to issuance of the permit.

The petitioner, Centex Homes Corporation (hereinafter called Centex), is the beneficial owner of real property held in trust by the petitioner, American National Bank and Trust Company of Chicago. The property is commonly known as 555 East Illinois Street in Chicago. Centex purchased the property on October 31, 1972, at a cost of $4,472,500. At the time of purchase, the property was zoned to permit construction of multiple-family, high-rise buildings. Mr. James Blaeser, regional vice-president of Centex, testified that Centex was aware of the zoning classification of the property prior to purchase, that Centex relied on that classification and would not have purchased the property had it not been so classified.

In November, 1972, the petitioners entered contracts for the preparation of surveys and architects' plans for the construction of a condominium project on the subject property. In December, 1972, a contract was entered for soil tests on the property. In January, 1973, a contract with a structural engineering firm was entered to provide working drawings and specifications for the project's construction. Also in that month, contracts for engineering and survey services and for mechanical drawings and typed specifications for the project were entered. Testimony established that payments totalling over $200,000 had been made on these contracts by the time of trial. On June 1, 1973, the same day the architects' plans were delivered to them, the petitioners applied for a building permit for the proposed project. The application was accompanied by the required information and the necessary fees were proffered. On or about June 15, 1973, the petitioners sent certified letters to the Chicago building

commissioner and the Commissioner of Development and Planning, demanding that a permit issue or that reasons be given for non-issuance. The letters described the expenditures to date on the project and apprised the officials of the economic hardship which would ensue should the permit be denied. There was no response to these letters. The petitioners brought the instant action to force issuance of the requested permit, alleging that there was no discretion in the building commissioner to withhold the permit.

The respondents filed an answer, admitting that the zoning in effect on the subject property would permit construction of a multi-story building. They stated that the building commissioner was not required to issue the permit requested by the petitioners, since at the date trial began there was pending before the Chicago City Council a lakefront study ordinance, which was introduced to the Council on June 6, 1973. A copy of "The Lakefront Plan of Chicago", upon which the proposed ordinance was based, is part of the record in this case. It is dated December, 1972; it was released on May 23, 1973. The policy for development of the lakefront, as outlined in the plan, was adopted by the City Council on October 24, 1973, the same day the lakefront protection ordinance was enacted. The lakefront plan recommended that no further private development be permitted east of Lake Shore Drive and the lakefront protection ordinance was meant to implement the plan. Since the petitioners' property is east of Lake Shore Drive, their projected multi-unit building is not a permitted use under present law.

The respondents' answer also alleged that widespread publicity attended the proposed zoning amendment, with the result that "every person has received actual notice of a likelihood of change in the law." The answer alleged that the petitioners have not substantially changed their position "prior to or during the time that the municipality is in the orderly process of enacting a comprehensive zoning ordinance amendment."

A hearing was held and the court found that the petitioners were entitled to the permit. A peremptory writ of mandamus was ordered, requiring the respondents to issue the requested permit.

We are obliged to determine this appeal on the basis of the law now in existence, in spite of the fact that at trial the ordinance which would prohibit the petitioners' project was not in effect. (*Fallon v. Illinois Commerce Com.*, 402 Ill. 516, 84 N.E.2d 641.) The respondents argue that the lakefront protection ordinance, which is now the law, applies to bar the petitioners' project. They contend that the city had a right to delay issuance of the permit while the ordinance was pending before the City Council. The respondents rely on what we term the *Palatine* rule, which has been expressed as follows:

"*  *  * a municipality may properly refuse to issue a permit for construction which is permitted under existing zoning classifications if the municipality has already begun statutorily prescribed amendatory procedures (such as public hearings on planning commission recommendations for ordinance amendments) which would prohibit the proposed building development (*Chicago Title & Trust Co. v. Palatine*, 22 Ill. App 2d 264, 268, 160 NE2d 699); *  *  *." *First National Bank of Skokie v. Village of Skokie*, 85 Ill. App. 2d 326, 332, 229 N.E.2d 378, 382.

The petitioners counter with the argument that they acquired a vested right to issuance of the permit under a well-established exception to the retroactive application of a change in the law. This exception, called the *Deer Park* rule (*Deer Park Civic Association v. City of Chicago*, 347 Ill. App. 346, 106 N.E.2d 823), has been approved by the Illinois Supreme Court:

"*  *  * any substantial change of position, expenditures, or incurrence of obligations occurring under a building permit or in reliance upon the probability of its issuance is sufficient to create a right in the permittee and entitles him to complete the construction and use the premises for the purposes originally authorized irrespective of a subsequent zoning or change in zoning classification." *Fifteen Fifty North State Building Corp. v. Chicago*, 15 Ill.2d 408, 416, 155 N.E.2d 97, 101.

■■ Where both the *Palatine* rule and the *Deer Park* rule are raised, the *Deer Park* exception may still prevail. That is, even if it is proper for a municipality to delay action on a permit while legislation is pending, the applicant may present evidence to establish a vested right to issuance of the permit, although the legislation enacted after application would bar the proposed project. (*People v. City of Calumet City*, 101 Ill. App. 2d 8, 241 N.E.2d 512.) *Palatine* was decided on the narrow issue of whether the applicant's right to a permit crystalized at the time of application, a time when the intended use was permitted. The court held that no vested right accrued as a result of the fortuitous timing of the application. Legislation to change the uses permitted on the applicant's property was pending at the time application was made. The question of whether the applicant had substantially changed position, etc., in reliance on existing zoning was not discussed. *Chicago Title & Trust Co. v. Village of Palatine*, 22 Ill.App.2d 264, 160 N.E.2d 697.

■■ The respondents contend that the vested right theory of *Deer Park* should not be applied in this case, since the *Deer Park* exception is directed at spot zoning of property in response to a permit application for an unwanted use. We find no merit in this contention. The vested

right theory has been applied in cases other than those involving spot zoning. (See, for example, *People ex rel. Skokie Town House Builders, Inc. v. Village of Morton Grove*, 16 Ill. 2d 183, 157 N.E.2d 33.) Moreover, the present case certainly raises the question of spot zoning. The law now forbids any private development east of Lake Shore Drive. The respondents state in their brief: "[t]he parcel of land in question is the last private vacant area on Chicago's lakefront." Hence, only the petitioners are affected by this prohibition against private development. The fact that this prohibition was but a part of a comprehensive lakefront plan does not foreclose the possibility of a part or parts of the plan amounting to spot zoning.

The respondents also contend that the vested rights theory has been appled in Illinois "only to situations where the permit application itself was the impetus for the proposed zoning change or where the landowner in question has already begun construction." We find no reason why the vested right theory should not be applied in the instant case. There is nothing in the *Deer Park* rule or in cases applying it requiring that the application precipitate a proposed change in the law. The timing of and motivation behind a proposed change in the law are not relevant to application of the rule as it is stated in Illinois. As a practical matter, of course, a proposed amendment may counter the applicant's argument of reliance on the probability a permit would issue, such that a change of position, etc., after knowledge of the proposal would not be included in a test of substantiality of change, expenditures, etc., which go to establish the vested right to issuance of a permit.

To determine whether the petitioners come within the *Deer Park* rule, two questions must be examined. One is whether the expenditures made by the petitioners were substanial, and the other is whether the expenditures were made in reliance on the probability a permit would issue.

■■■ The petitioners detailed their expenditures, amounting to $212,815 in addition to the cost of the land by the time of trial. The seven contracts entered by the end of January, 1973, resulted in total obligations of $380,815, partial payment of which is represented by the expenditures in evidence. The respondents argue that the petitioners' expenditures do not qualify as substantial, because there is no evidence of the proportion of the proposed project represented by the expenditures and because the cost of the land should not be considered in determining whether substantial expenditures have been incurred. The respondents cite cases in other jurisdictions to support this attack on substantiality. It, is, however, the rule in Illinois that substantiality is determined without regard to any proportional test and by considering the cost of the land. (*People*

*ex rel. National Bank v. County of Cook,* 56 Ill. App. 2d 436, 206 N.E.2d 441). On the record in this case, the petitioners met the test of substantiality under the *Deer Park* rule.

The next point to examine is whether the expenditures were made in reliance on the probability a permit would issue. At the time the property was purchased and throughout the lower court proceedings, the property was zoned to permit the proposed use. To the north and south of the petitioners' property, multi-family high-rise buildings had been or were being constructed. Mr. Blaeser testified that the property was purchased and contracts entered in reliance on the existing zoning classification, permitting the petitioners' projected high-rise.

The respondents contend that the petitioners had actual knowledge of the lakefront plan, but proceeded with their project in spite of such knowledge. They argue that Mr. Blaeser admitted such knowledge at trial. The record reveals the following exchange, upon which the respondents base their contention:

"Q. Now, Mr. Blaeser, were you aware of the proposed Chicagoland Lakefront Plan back in the middle of 1972?

A. I believe we saw a document that was prepared at that time."

While it is obvious that such testimony does not prove that the petitioners had actual knowledge of the proposed change in zoning of their property, the respondents claim that the testimony raises the inference that the petitioners had such knowledge. It was then, goes the argument, the petitioners' burden to prove that they did not have such knowledge. We cannot agree. The Chicagoland Lakefront Plan mentioned in the question of Mr. Blaeser was not identified as the one upon which the City Council was during trial considering action. The plan upon which the enacted ordinance was based was called "The Lakefront Plan of Chicago." That there is reason for making such a technical distinction was brought out at oral argument in this cause. The petitioners presented, with the consent of the respondents, a number of other lakefront plans proposed at various times. It was for the respondents to show that the plan which would change the zoning of the petitioners' land was known to the petitioners prior to the time that substantial expenditures were made.

■■ The respondents argue that there was public notice and widespread media coverage of the lakefront plan "so that every person has received actual notice of the likelihood of change in the law." The quoted statement from respondents' answer to the petition for a writ of mandamus was not replied to by the petitioners. The respondents claim that this failure to reply amounts to an admission of the statement's truth, thereby

establishing that the petitioners had knowledge of a proposed change in zoning. (See *Westerheide v. Obernueferman,* 3 Ill. App. 3d 996, 279 N.E.2d 402, where a proposal was "general knowledge" in the community.) Of what is the statement an admission? That at some point the petitioners were aware of the proposal is obvious. The real question is whether the awareness preceded their expenditures, and there is no evidence in this record that such was the case. "The Lakefront Plan of Chicago," which is in the record, is dated December, 1972. It was released May 23, 1973. The respondents offered no evidence to substantiate their claim of widespread media coverage of the plan or to establish a date at which time the plan could be said to be generally known in the community. Hence, even if we regard the petitioners' failure to deny the statement quoted above as an admission of its truth, it does not defeat their claim to a vested right in the permit. The petitioners established every material fact necessary to show the plain duty of the respondents to act as requested; hence, they were entitled to the writ of mandamus. (*Brown v. City of Joliet,* 108 Ill. App. 2d 230, 247 N.E.2d 47.) The record shows that the petitioners expended substantial sums in reliance on the probability a permit would issue. Having established their right to a writ, it was for the respondents to show that the petitioners did not rely on existing zoning at the time the expenditures were made.

For the reasons stated, the judgment is affirmed.

Judgment affirmed.

EGAN, P. J., and HALLETT, J., concur.