SAGITTARIUS, INC., Plaintiff-Appellee, *v.* THE VILLAGE OF ARLINGTON HEIGHTS, Defendant-Appellant.

First District (1st Division)    No. 80-1355

Opinion filed November 10, 1980.

Jack M. Siegel, of Chicago, for appellant.

Feiwell, Galper & Lasky, Ltd., of Chicago (George S. Feiwell, Michael J. Kralovec, and Bernard L. Rivkin, of counsel), for appellee.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Sagittarius, Inc., brought an action against the village of Arlington Heights to compel the issuance of a business license for coin-operated amusement devices. The complaint sought injunctive and other relief and was amended to add a mandamus count. On plaintiff's motion, the circuit court of Cook County granted judgment on the pleadings on the *mandamus* count and Arlington Heights was ordered to issue the license. The trial court found there was no just reason to delay enforcement or appeal of this order (Ill. Rev. Stat. 1977, ch. 110A, par. 304(a)), and Arlington Heights appeals.

The facts are stated in the pleadings. Sagittarius' complaint, filed

December 10, 1979, alleged that on August 15, 1979, it filed an application for a business license to operate coin-operated amusement devices in Arlington Heights. On November 20, 1979, the Village Manager of Arlington Heights rejected the application by a letter which stated.

"Pursuant to Section 9—204 of the Arlington Heights Municipal Code, we have conducted an investigation to determine the character or fitness of the applicant for a license. Our investigation reveals that your Manager, Mr. Posner, was convicted in the United States District Court of Interstate Transportation in Aid of Racketeering-Gambling (Title 18, U.S.C.) on July 10, 1972. The sentence was affirmed by the Court of Appeals. The investigation further revealed that Mr. Posner was found to have violated probation based on two guilty pleas of gambling and was sentenced to three years by the U.S. District Court in 1978. He was also found in contempt for attempting to disguise his handwriting.

We also determined that Mr. Joseph Ferriola has an interest in your company. Mr. Ferriola has an arrest record dating from 1945. On June 19, 1970, he was sentenced for Interstate Transportation in Aid of Racketeering-Gambling in the U.S. District Court for the Northern District of Illinois."

Sagittarius appealed the village manager's decision to the village president and board of trustees. On December 3, 1979, the president and board sustained the decision of the village manager.

The complaint further alleged that section 9—204 of the Arlington Heights Village Code is a general procedural section applicable only where another specific provision of the Code authorizes an investigation of character and fitness. Section 10—105 is the specific investigation provision pertaining to coin-operated amusement devices. It authorizes an investigation only to determine whether an applicant's proposed operations and premises comply with the Village Code. There is no reference to an investigation into an applicant's character and fitness. The complaint concluded that the action of the village manager in investigating Sagittarius' character and fitness and denying the application on that basis was not authorized under the Village Code. Plaintiff sought injunctive relief and a declaratory judgment that section 9—204 does not authorize an investigation of an applicant's character and fitness.

On January 7, 1980, Sagittarius amended its complaint, realleging the material allegations noted above, and adding a mandamus count. That count alleged that plaintiff complied with all applicable provisions of the Village Code dealing with coin-operated amusement devices and that Arlington Heights failed to provide any proper basis for denial of the license. It was further alleged that Arlington Heights was under a duty to issue the license pursuant to section 9—205 of the Village Code which

provides that "＊ ＊ ＊ where licenses are required to be obtained and the requirements of the Code are complied with, such licenses shall be granted by the Village Manager and attested by the Village Clerk ＊ ＊ ＊ ."

On March 19, 1980, Arlington Heights filed its answer to the amended complaint. It denied that Sagittarius' license application was proper because "its principals, manager, or employees were ineligible for such license." It alleged that the relevant provision for licensing of coin-operated amusement devices was section 10—902(d) of the Village Code which was amended on January 7, 1980, to add the following paragraph:

> "The application shall be referred to the police chief for investigation and verification of the facts stated therein. The Chief of Police shall determine whether the applicants, or if a partnership or corporation, any stockholder or member of the partnership or any employee or manager, has been convicted of a criminal offense in either the state or federal court. The Police Chief shall also determine whether the applicant or if a corporation or partnership, any stockholder, member, employee or manager, has employed coercive or illegal measures to promote the use of his machines. The Police Chief shall further determine whether the applicant or its principals, employees or managers are persons of good moral character. If the Police Chief shall determine that the applicant, its stockholders, members, employees or managers, or any of them, have in fact been so convicted or have engaged in such coercive or illegal measures or otherwise are not persons of good character and fitness, he shall report the results of his findings to the Village Manager. The Village Manager shall then order that said license shall not be issued. The applicant shall have the right of appeal to the Village Board provided in Section 9—603 through 9—605 of the Village Code; provided, however, that the provisions of Section 9—604 relating to a period of time for correction shall not be applicable. If the Village Manager shall determine at any time that any licensee is not, in fact, eligible by reason of any facts which would not have made him eligible for the issuance of an original license, he shall order the revocation of such license in the manner provided Section 9—603 through 9—605 of this Code."

The answer also alleged that section 10—902(d), as amended, contained the specific applicable investigation provisions for coin-operated amusement device licenses rather than section 10—105. It further alleged that on February 8, 1980, the Arlington Heights village manager reconsidered Sagittarius' application in light of the amendment to section 10—902(d) and again denied the application based on Posner's and Ferriola's criminal records.

On May 7, 1980, the trial court granted plaintiff's motion for judgment on the pleadings on the *mandamus* count. It ordered the immediate issuance of a writ of *mandamus* directing Arlington Heights to issue Sagittarius' business license.

On appeal, Arlington Heights contends that (1) Sagittarius was not entitled to a writ of *mandamus* because it failed to prove a clear legal right to the business license; (2) Sagittarius was not entitled to judgment on the pleadings because controverted issues of material fact existed; (3) Arlington Heights has a continuing right to amend its ordinances; section 10—902(d), as amended, applied to Sagittarius' license application, and denial of the application upon reconsideration was proper.

Arlington Heights originally denied Sagittarius' application based upon a character and fitness investigation under section 9—204 of the Village Code. Sagittarius contends that such an investigation was improper under that section because it is not a grant of general investigative powers but is only a procedural provision. We find it unnecessary to consider Sagittarius' contention for the reason that section 10—902(d), as amended, is applicable to Sagittarius' application.

■■■ As a general rule, a legislative body has a continuing right to amend a statute or ordinance, even while litigation is pending involving the legislation. The court must decide the case in accordance with the law in effect at the time of decision. (*Fallon v. Illinois Commerce Com.* (1948), 402 Ill. 516, 84 N.E.2d 641; *People ex rel. Eitel v. Lindheimer* (1939), 371 Ill. 367, 21 N.E.2d 318.) This rule is equally applicable to cities and villages and the enactment of ordinances. (*Bohan v. Village of Riverside* (1956), 9 Ill. 2d 561, 138 N.E.2d 487.) Likewise, the repeal of an ordinance stays all proceedings arising from it which are pending at the time of appeal. *County of Du Page v. Molitor* (1960), 26 Ill. App. 2d 232, 167 N.E.2d 592.

■■ One limitation on the right of a legislative body to amend or repeal legislation is the prohibition against affecting vested rights. (*Gibbons v. Aurora, Elgin & Chicago R.R. Co.* (1914), 263 Ill. 266, 104 N.E. 1063; *Dumke v. Anderson* (1976) 44 Ill. App. 3d 626, 358 N.E.2d 344 (statutory right to office); *Renieris v. Village of Skokie* (1967), 85 Ill. App. 2d 418, 229 N.E.2d 345 (secured property right).) For example, where an applicant for a building permit has substantially changed his position in reliance on the zoning in effect at the time of his application, he acquires vested rights to the issuance of a permit. *Cos Corp. v. City of Evanston* (1963), 27 Ill. 2d 570, 190 N.E.2d 364; *Fifteen Fifty North State Building Corp. v. City of Chicago* (1958), 15 Ill. 2d 408, 155 N.E.2d 97.

Sagittarius neither quarrels with the general rule nor asserts it obtained any vested right to a license for coin-operated amusement devices. Rather, it contends that because of Arlington Heights' unautho-

rized and extralegal investigation into character and fitness, it was prevented from obtaining a vested right to the license. Sagittarius cites three cases in support of its argument: *People ex rel. J. C. Penney Properties, Inc. v. Village of Oak Lawn* (1976), 38 Ill. App. 3d 1016, 349 N.E.2d 637; *Sgro v. Howarth* (1964), 54 Ill. App. 2d 1, 203 N.E.2d 173; and *Phillips Petroleum Co. v. City of Park Ridge* (1958), 16 Ill. App. 2d 555, 149 N.E.2d 344.

*J. C. Penney* and *Sgro* dealt with attempts by municipalities to suspend informally zoning ordinances via resolution or moratorium in order to deny building permits which should have been issued under the existing ordinances. Neither case involved a legal amendment of the ordinance pursuant to the applicable municipal code provisions.

In *Phillips*, plaintiff applied for a building permit for the construction of a retail filling station. At the time of the application, the property in question was zoned commercial and a filling station was an authorized use. Shortly thereafter, the city council passed a resolution requiring the building department not issue any building permits for gasoline service stations. When the city ignored plaintiff's demands that the permit issue, plaintiff brought an action for a writ of *mandamus*. The trial court denied and dismissed the petition for *mandamus*. The appellate court reversed, holding (as did *J. C. Penney* and *Sgro*) that the resolution passed by the city council did not suspend the zoning ordinance then in effect and that plaintiff was entitled to a writ of *mandamus*.

The *Phillips* court also noted that subsequent to the final order of the trial court the zoning ordinance had been lawfully amended so that a filling station could not be built or operated on the land in question. The court recognized the general rule that there is no vested right in the continuance of a law or ordinance and that a reviewing court should apply the law in existence at the time of the appeal, but stated that there was a vested rights exception to the rule when there was a substantial change of position, expenditure or incurrence of obligations, stating:

> "In the case before us the plaintiff does not claim that it had acquired a vested right, but it does claim that because of the improper, invalid and arbitrary action of the building department of the city of Park Ridge, in reliance upon a void resolution, the plaintiff, although having acquired title to the property in question, was prevented from taking any measures which could have given it a vested right, and it contends that the defendants cannot in this court urge that the case should be disposed of here under the now existing zoning ordinance. With this contention of the plaintiff we are in accord. It would be a strange perversion of the law to hold that the defendants could now take advantage of their own wrong and in effect say that by virtue of the subsequent amendatory

ordinance the plaintiff could now be prevented from building and operating a filling station since it had not taken any steps under which it could have acquired a vested right, when the reason that it had not was because it was prevented from acting by the invalid resolution passed by the city council. The rights of the parties crystallized at the time when the permit was applied for and was improperly withheld. To hold otherwise would be to give the city, without statutory authority, a right to suspend a zoning ordinance." 16 Ill. App. 2d 555, 565-66.

Here, Sagittarius has not pleaded that it had a vested right or that it was prevented from securing a vested right by the acts of the village of Arlington Heights. The vested rights exception to the rule that a reviewing court apply the law in existence at the time of appeal is not applicable. Clearly, the undenied facts concerning character and fitness of those managing and having an interest in Sagittarius were ample reason under section 10—902(d) to deny Sagittarius' application. The writ of *mandamus* was improperly issued.

■■ Moreover, in *Phillips* the applicant had a clear right to a building permit because of its compliance under the then-existing zoning ordinances. Only by the patently wrongful acts of the municipality was applicant prevented from acquiring a vested right. Sagittarius did not share a similar expectation that its application would be granted because there was no clear right to be free from a character and fitness investigation under the Village Code. At best, Sagittarius had a colorable argument that the Code failed to authorize such an investigation for coin-operated amusement devices. Even if Arlington Heights misinterpreted its ordinances and the investigation under the then-existing ordinance was not authorized, the element of a bad faith attempt to subvert existing ordinances as found in *Phillips* is clearly lacking. In any event, the amendment to section 10—902 of the Village Code was applicable. Hence, the investigation of Sagittarius' character and fitness and the resultant denial of its application were proper.

The judgment of the circuit court of Cook County is reversed.

Reversed.

GOLDBERG, P. J., and McGLOON, J., concur.