ISLAND LAKE WATER COMPANY, INC., Plaintiff-Appellant, v. La SALLE DEVELOPMENT CORPORATION *et al.*, Defendants-Appellees.

Second District   No. 84—0900

Opinion filed May 5, 1986.

Michael T. Caldwell, of Caldwell, Berner & Caldwell, of Woodstock, and Matthew J. Iverson, of Abramson & Fox, of Chicago, for appellant.

David C. LeSueur, of Diamond & LeSueur, of McHenry, and Katherine S. Janega, of Ancel, Glink, Diamond, Murphy & Cope, of Chicago, for appellees.

JUSTICE SCHNAKE delivered the opinion of the court:

Plaintiff, Island Lake Water Company, Inc. (the water company), is a public utility which has served the village of Island Lake (the village) for many years. In December 1980 the village adopted an ordinance annexing certain territory known as the Fox River Shores area and approving an annexation agreement between the village, La Salle

Development Corporation (La Salle), and the Central National Bank, as trustee. The agreement called for the residential development of the annexed area by La Salle. The agreement provided that La Salle "shall furnish and the Village shall agree to purchase a potable water system [for the Fox River Shores area] ***. Such potable water system shall consist of well, pump unit, pumping house, storage, treatment, [and] piping up to 75 feet of the well head." The agreement also required La Salle to construct water mains and to sell them to the village when they became operational. La Salle entered into a joint venture with E A N Corporation (E A N) to fulfill its responsibilities under the agreement. The joint venture was named the Fox River Shores Joint Venture. The joint venture subsequently entered into a contract with the Blackmore Sewer Construction Company, Inc. (Blackmore), for the installation of the water mains, and another contract with the Henry Boyson Company (Boyson) for the drilling of a test well. The joint venture also requested Boyson to submit a bid for construction of the water system.

In February 1984 the water company filed a complaint seeking to enjoin the construction of the water system and mains, and the trial court issued a temporary restraining order prohibiting the construction. That order remained in effect until April 1984 when a hearing was held to determine whether a preliminary injunction should issue. Following that hearing, the court issued a preliminary injunction prohibiting the construction of the water system, but permitting the installation of the water mains.

The water company was subsequently allowed to file an amended complaint adding additional parties defendant. In response, the developers filed a motion to dismiss under section 2—619(a)(9) of the Code of Civil Procedure. (Ill. Rev. Stat. 1985, ch. 110, par. 2—619(a)(9).) The village joined in the motion, and it was heard in September 1984. Following the hearing, the trial court dismissed the complaint and dissolved the preliminary injunction. The water company has appealed to this court.

According to the complaint, the water company had been issued a certificate of convenience and necessity by the Illinois Commerce Commission to construct, operate, and maintain a public waterworks in a territory including the Fox River Shores area. The complaint further alleged that the developers had not applied for such certificate. The complaint sought to enjoin the construction of the water system and mains under what was then section 55 of the Public Utilities Act (Ill. Rev. Stat. 1983, ch. 111²/₃, par. 56). Our General Assembly has subsequently repealed that act and enacted a new Public Utilities Act

(Ill. Rev. Stat. 1985, ch. 111⅔, par. 1—101 *et seq.*). The provision upon which the water company relied has been included without any change material to this case in section 8—406(b) of the new act. It provides, in relevant part:

"No public utility shall begin the construction of any new plant, equipment, property or facility which is not in substitution of any existing plant, equipment, property or facility or any extension or alteration thereof or in addition thereto *** unless and until it shall have obtained from the Commission a certificate that public convenience and necessity require such construction." Ill. Rev. Stat. 1985, ch. 111⅔, par. 8—406(b).

Defendants advanced two theories in the trial court. First they argued that the lawsuit was essentially one for *quo warranto* and that the water company did not have standing to bring such action. On the merits defendants argued that they were not subject to section 55 of the Act because the water system and mains were going to be owned and operated by the village. They cited the portion of section 10.3 of the Act which exempted from the definition of "public utility" those "public utilities that are owned and operated by any *** municipal corporation of this State." (Ill. Rev. Stat. 1983, ch. 111⅔, par. 10.3.) That exemption has been carried over verbatim into the new act. (Ill. Rev. Stat. 1985, ch. 111⅔, par. 3—105.) It has been held that there is nothing to prevent a municipally owned utility from competing directly in the same area of operation with a privately owned utility. *People ex rel. Buffalo Utility Co. v. Village of Buffalo Grove* (1967), 85 Ill. App. 2d 382, 299 N.E.2d 401.

With respect to the issue of standing, plaintiff contended that the lawsuit was not one for *quo warranto* and that it had standing to bring the action pursuant to section 55 of the Act. On the merits plaintiff argued that the exemption for municipally owned and operated public utilities was not applicable because, as stated in its complaint, "the Defendant VILLAGE has never taken any steps to create, build, or fund a municipal water system."

As noted above, the annexation agreement provided that La Salle "shall furnish and the Village shall agree to purchase a potable water system ***." The agreement also provided:

"The Developer *** and the village shall develop by mutual consent a viable program to finance said potable water plant facilities in the form of revenue bonds, lease purchases, tap-on fees and such other forms of public or private interest as may be agreed to. It is expressly understood that purchase, operation, maintenance and depreciation shall be paid for directly

from the use of the potable water plant facilities in the form of adequate rates, connection charges and other fees. \*\*\* It is further understood that the Village shall at all times own, operate and maintain the potable water plant and distribution system [mains] subject to the foregoing."

The agreement also required La Salle to construct water mains and to sell them to the village when they became operational.

At the preliminary injunction hearing, the evidence disclosed that the village was not a home rule unit. In addition to annexing the Fox River Shores area and entering into the annexation agreement, the village had taken the following steps toward owning and operating the water system and mains. It had passed a resolution stating that it "will authorize revenue bonds" for the project. The resolution included no financial details regarding the contemplated bond issue. The village also enacted an ordinance declaring "its firm intent to own, operate and maintain" the waterworks "when it is installed and completed."

Following presentation of the evidence, the trial court ruled that the water company had standing to bring the action. On the merits the court found that the village had done nothing to establish a municipal water utility under the provisions of divisions 117, 125, 127, 129, 130, and 131 of article 11 of the Illinois Municipal Code. (Ill. Rev. Stat. 1985, ch. 24, par. 1—1—1 *et seq.*) The court concluded that until such action was undertaken, the water project at issue would not be exempt from section 55 of the Public Utilities Act. Accordingly, the court issued the preliminary injunction described above.

In the motion to dismiss which the developers subsequently filed, they reiterated their contention that the water company did not have standing. The developers also alleged that, after the preliminary injunction was issued, the village had enacted several ordinances relating to the waterworks. Certified copies of the ordinances were attached to the motion. One was ordinance 595, which provided for the issuance of $400,000 in revenue bonds. Ordinance 595 was purportedly enacted under division 130 of article 11. Section 11—130—3 of that division provides that "[a]ny municipality may purchase or construct waterworks \*\*\* as provided in this Division 130." (Ill. Rev. Stat. 1985, ch. 24, par. 11—130—1.) Section 11—130—1 provides that, in order to purchase or construct waterworks under division 130, the village shall enact an ordinance providing for the issuance of revenue bonds. The ordinance is required, *inter alia*, to set forth certain financial details regarding the bonds and the method by which they will be paid. (Ill. Rev. Stat. 1985, ch. 24, par. 11—130—3.) Section 11—

130—4 provides for publication or posting of the ordinance, along with the statement "that the municipality contemplates the issuance of the bonds described in the ordinance, and that any person interested may appear before the corporate authorities upon a certain date *** and present protests." That section also provides that "[a]t this hearing all objections and suggestions shall be heard, and the corporate authorities shall take such action as they shall deem proper in the premises." (Ill. Rev. Stat. 1985, ch. 24, par. 11—130—4.) The motion also alleged that a public hearing on ordinance 595 was conducted and that after that hearing the village adopted ordinances authorizing the execution of a revenue bond purchase agreement with the developer (596), establishing rules and regulations governing water service (598), and establishing connection fees, availability charges, and service charges for the water system (599). The motion also alleged that the well site had been conveyed to the village. These allegations in the motion were supported by affidavit, and the water company did not contest the facts. The trial court concluded that the village had complied with the requirements of the Illinois Municipal Code regarding construction of waterworks, and that, therefore, defendants were exempt from the Public Utilities Act. Accordingly, the amended complaint was dismissed and the preliminary injunction was dissolved.

In this court the water company filed its brief, arguing that defendants' allegations, concerning the actions taken by the village after the preliminary injunction was issued, should not have been considered in connection with a motion to dismiss under section 2—619(a)(9) of the Code of Civil Procedure, and that, even had they been properly considered, the actions of the village were insufficient to create a municipal waterworks exempt from the Public Utilities Act. After the water company filed its brief, the village filed a verified motion to dismiss the appeal as moot, and the developers subsequently joined in the motion. The village asserted that, after the water company filed its notice of appeal, the village repealed ordinance 595 which had provided for the issuance of $400,000 in revenue bonds pursuant to division 130. In its stead the village enacted ordinance 604 which purported to authorize the issuance of the revenue bonds under division 129. Section 11—129—1 of the Illinois Municipal Code provides that "[a]ny municipality with a population of less than 500,000 is authorized, as provided in this Division 129, to build, or purchase, and to operate a waterworks system or water supply system ***." (Ill. Rev. Stat. 1985, ch. 24, par. 11—129—1.) Such a project is to be financed with revenue bonds (Ill. Rev. Stat. 1985, ch. 24, par. 11—129—2), and the municipality is required to adopt an ordi-

nance describing the contemplated project and setting forth certain financial details about the proposed bond issue (Ill. Rev. Stat. 1985, ch. 24, par. 11—129—3). The ordinance is required to be published, and if, within 21 days after publication, a petition is filed signed by "electors numbering 20% of the number of electors voting for the mayor or president at the last preceding general municipal election," the question of building or purchasing the waterworks is required to be submitted to the electors for their approval.[1] If no petition is filed within 21 days, the ordinance automatically goes into effect. Notice of the right to petition for a referendum is required to be published along with the ordinance. (Ill. Rev. Stat. 1985, ch. 24. par. 11—129—4.) According to the village's motion to dismiss appeal, ordinance 604 was published along with the required notice of the right to petition for referendum. The notice stated that if a petition was filed, the question would be submitted to the electors at the consolidated election to be held on April 2, 1985. The village further asserted that no petition for referendum was filed within 21 days after publication. Finally, the village averred that on February 14, 1985, ordinance 608 was adopted which confirmed an agreement for the sale of $180,000 of the revenue bonds. The water company filed objections to the motion to dismiss appeal. It argued that this court should not consider the ordinances that were adopted after its notice of appeal was filed because they were not reflected in the record on appeal. The water company also argued that even if those ordinances could be considered, they would not render the appeal moot because they were insufficient to create a municipal water utility exempt from the Public Utilities Act. The motion to dismiss appeal and the objections thereto were taken with the case. The village and the developers then filed their briefs. In addition to responding to the arguments made by the water company, defendants once again challenged its standing to bring the lawsuit.

■■ ■ We first consider defendants' motion to dismiss this appeal as moot. We disagree with the argument of the water company that we may not take cognizance of the ordinances adopted after the filing of the notice of appeal. As a general rule, a legislative body has a continuing right to amend a statute or ordinance, even while litigation is pending involving the legislation, and the court must decide the case in accordance with the law in effect at the time of decision. (*Sagittarius, Inc. v. Village of Arlington Heights* (1980), 90 Ill. App. 3d 404, 413 N.E.2d 90.) While this general rule is inapplicable where the

---

[1]Under certain circumstances, not present here, the ordinance would go into effect upon publication, and there would be no right to petition for a referendum.

amendment or repeal affects vested rights (90 Ill. App. 3d 401, 413 N.E.2d 90), the water company has not argued that it had any vested rights under the ordinance adopted pursuant to division 130, which was repealed and replaced by the ordinances under division 129 adopted after the notice of appeal was filed. While it is true that the ordinances adopted under division 129 are not in the record on appeal, they are proper subjects for judicial notice. Section 8—1001 of the Code of Civil Procedure provides that courts of original jurisdiction "shall take judicial notice of *** [a]ll general ordinances of every municipal corporation within the State" (Ill. Rev. Stat. 1985, ch. 110, par. 8—1001), and section 8—1002 provides that "[u]pon the review by any court of appellate jurisdiction of a judgment or order of a circuit court the court of appellate jurisdiction shall take judicial notice of all matters of which the circuit court was required to take judicial notice" (Ill. Rev. Stat. 1985, ch. 110, par. 8—1002).

■ We do agree, however, with the water company's contention that the latest round of ordinances does not render this case moot. While the sufficiency of the repealed ordinance, adopted under Division 130, to create a municipally owned utility exempt from the Public Utilities Act has become a moot issue, the question remains whether the ordinances adopted in substitution therefor are sufficient. While the primary emphasis of the briefs is on the issue that has been rendered moot, the positions of the parties on the viable question are sufficiently clear to permit appellate review.

■ We next consider the argument of defendants that this action is essentially one for *quo warranto* and that the water company does not have standing to bring such action. It is clear that the principal issue raised by the water company in this proceeding could have been raised in a *quo warranto* action. That issue is whether the village has taken the steps required by the Illinois Municipal Code to construct, own, and operate the waterworks and water distribution system. An action for *quo warranto* may be used to challenge the authority of a municipal corporation to act. (See *People ex rel. Citizens For A Better Bloomingdale v. Village of Bloomingdale* (1976), 37 Ill. App. 3d 583, 346 N.E.2d 5.) It is also clear that certain issues, such as the validity of an annexation of territory to a municipality, may be raised only in an action for *quo warranto*. (See *People ex rel. Gordon v. City of Naperville* (1975), 30 Ill. App. 3d 521, 332 N.E.2d 204.) We need not decide, however, whether this action is essentially one for *quo warranto* because, in our judgment, the water company would have standing to bring such action.

Section 18—102 of the Code of Civil Procedure, concerning pro-

ceedings for *quo warranto,* provides:

"The proceeding shall be brought in the name of the People of the State of Illinois by the Attorney General or State's Attorney of the proper county, either of his or her own accord or at the instance of any individual relator; or by any citizen having an interest in the question on his or her own relation, when he or she has requested the Attorney General and State's Attorney to bring the same, and the Attorney General and State's Attorney have refused or failed to do so, and when, after notice to the Attorney General and State's Attorney, and to the adverse party, of the intended application, leave has been granted by the circuit court." (Ill. Rev. Stat. 1985, ch. 110, par. 18—102.)

Defendants do not base their challenge to the water company's standing on any alleged failure to request the Attorney General and State's Attorney to bring an action for *quo warranto,* but rather they maintain that the water company does not have a sufficient "interest" to bring such an action on its own relation.

Our supreme court has held that the interest required must be one that is personal to the plaintiff and not common to the public. (*People ex rel. J.H. Anderson Monument Co. v. Rosehill Cemetery Co.* (1954), 3 Ill. 2d 592, 122 N.E.2d 283.) Moreover, the damage to the private interest must be then occurring or very likely to occur. (See *People ex rel. Kirby v. City of Effingham* (1976), 43 Ill. App. 3d 360, 356 N.E.2d 1315; *People ex rel. Gordon v. City of Naperville* (1975), 30 Ill. App. 3d 521, 332 N.E.2d 204.) In the instant case, according to the water company's complaint, it holds a certificate of convenience and necessity to serve the Fox River Shores area. Moreover, there was some testimony at the preliminary injunction hearing to the effect that the water company was serving a small number of customers in the area. These facts indicate that the water company has a commercial interest, not common to the public, which will very likely be injured by the operation of the proposed waterworks system and distribution system being built by the developers. Accordingly, it would have been improper to dismiss the water company's complaint without leave to amend on the basis of standing. The case upon which defendants place principal reliance, *People ex rel. Buffalo Utility Co. v. Village of Buffalo Grove* (1967), 85 Ill. App. 2d 382, 229 N.E.2d 401, is distinguishable. In *Buffalo Utility Co.* the water company challenging the authority of the village to construct a waterworks and sewerage system for certain territory annexed to the village did not hold a certificate of convenience and necessity to serve and was not

serving that territory. In concluding that the water company did not have standing to bring an action for *quo warranto*, the court stated, among other things, "[T]here is no claim that the defendant's action can ever affect the relator's market within its existing certificated area." (85 Ill. App. 3d 382, 386, 229 N.E.2d 401.) Here the water company is making that very claim.

■ We proceed, therefore, to the issues raised by the water company in its brief. We first consider the contention that the actions taken by the village after the preliminary injunction was issued should not be considered in connection with the motion to dismiss under section 2—619(a)(9). That section provides:

"(a) Defendant may, within the time for pleading, file a motion for dismissal of the action *** upon any of the following grounds. If the grounds do not appear on the fact of the pleading attacked the motion shall be supported by affidavit:

*  *  *

(9) That the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." (Ill. Rev. Stat. 1985, ch. 110, par. 2—619(a)(9).)

It has been held that "affirmative matter" under that provision is something in the nature of a defense that negates an alleged cause of action completely or refutes crucial conclusions of law or conclusions of material fact unsupported by allegations of specific fact contained in or inferred from the complaint. (*In re Marriage of Musa* (1982), 103 Ill. App. 3d 189, 430 N.E.2d 727.) "Affirmative matter" must, however, be something more than evidence offered to refute a well-pleaded fact in the complaint because such well-pleaded facts must be taken as true for purposes of a motion to dismiss. (See *Davis v. Weiskopf* (1982), 108 Ill. App. 3d 505, 439 N.E.2d 60.) The water company maintains that defendants' allegations concerning the actions taken by the village after the preliminary injunction was issued are contrary to the well-pleaded allegation in the complaint that "the Defendant VILLAGE has never taken any steps to create, build, or fund a municipal water system," and, therefore, did not constitute "affirmative matter" under section 2—619(a)(9). We are inclined to agree with that contention, but our agreement does not end the matter.

■ Where a motion to dismiss improperly attempts to refute well-pleaded facts in the complaint, it will be considered as a motion to dismiss for failure to state a cause of action under section 2—615 (Ill. Rev. Stat. 1985, ch. 110, par. 2—615). (*Davis v. Weiskopf* (1982), 108 Ill. App. 3d 505, 510, 439 N.E.2d 60.) And in considering the suf-

ficiency of a complaint under that section, courts must disregard allegations which are contrary to facts of which the court takes judicial notice. (*Nicketta v. National Tea Co.* (1949), 338 Ill. App. 159, 87 N.E.2d 30.) We have already concluded that we may properly take judicial notice of the ordinances adopted by the village. To the extent, therefore, that these ordinances are inconsistent with the water company's allegation that "the Defendant VILLAGE has never taken any steps to create, build, or fund a municipal water system," we must disregard that allegation.

We have been required to follow the parties down a rather long and tortuous procedural path, but we have finally arrived at the merits of the case. The question that remains is whether the ordinances that have been adopted by the village are sufficient to create a municipal utility. If they are, the water company's complaint would fail to state a cause of action because such a utility is exempt from the Public Utilities Act.

The gist of the water company's argument on this issue is that, pursuant to division 117 of the Illinois Municipal Code, the village may not construct or acquire a public utility without first submitting the issue to the electors in a referendum. Section 11—117—1 of the Code authorizes "any municipality" to "acquire, construct, own and operate" a public utility "[s]ubject to the provisions of this Division 117." (Ill. Rev. Stat. 1985, ch. 24, par. 11—117—1.) The water system contemplated in this case would be a public utility as that term is used in division 117. (Ill. Rev. Stat. 1985, ch. 24, par. 11—117—2.) Section 11—117—3 is the provision upon which the water company places principal reliance. It provides:

> "No municipality shall proceed to acquire or construct any public utility under the provisions of this Division 117 until an ordinance of the corporate authorities providing therefor has been duly passed. This ordinance shall set forth the action proposed, shall describe the plant, equipment, and property proposed to be acquired or constructed, and shall provide for the issuance of bonds, mortgage certificates, or special assessment bonds, as authorized in this Division 117.
>
> This ordinance shall not become effective until the question of its adoption is submitted to a referendum vote of the electors of the municipality. ***" (Ill. Rev. Stat. 1985, ch. 24, par. 11—117—3.)

The water company's position is that the referendum requirement of division 117 is applicable to attempts by a municipality to construct a waterworks system under division 129. We cannot agree.

■ By its terms, section 11—117—3 requires a referendum when a municipality proposes to acquire or construct any public utility "under the provisions of this Division 117." Here the municipality is not proceeding under division 117. It is proceeding under division 129 which authorizes certain types of municipalities to build and operate waterworks by following a different procedure under which a referendum is required only if 20% of the voters petition for one. Section 1—9—1 of the Illinois Municipal Code includes the following rule of construction:

"The provisions of this Code shall be cumulative in effect and if any provision is inconsistent with another provision of this Code ***, it shall be considered as an alternative or additional power and not as a limitation upon any other power granted to or possessed by municipalities." (Ill. Rev. Stat. 1985, ch. 24, par. 1—9—1.)

Applying that rule of construction, we conclude that division 117 provides an alternative procedure to that set forth in division 129 for a municipality to construct and operate a waterworks system and that division 117 does not limit the power of a municipality in proceeding under division 129.

Our conclusion is buttressed by the following consideration. If the water company were correct, and a referendum under division 117 were required before a municipality could build and operate a waterworks under division 129, there would have been no point in giving the electors a right to petition for a referendum in division 129. If we were to adopt the water company's position, the portion of section 11—129—4 conferring that right to petition on the voters would be rendered superfluous, a result not to be presumed in statutory construction. See *County of Winnebago v. Industrial Com.* (1966), ·34 Ill. 2d 332, 215 N.E.2d 258.

■ The village has taken the necessary action to build and operate a municipally owned utility. The utility being constructed by the developers is exempt from the Public Utility Act pursuant to section 3—105. Accordingly, the water company may not enjoin its construction under section 8—406(b) of the Act, and the complaint was properly dismissed.

For the foregoing reasons, the judgment of the circuit court of McHenry County is affirmed.

Affirmed.

HOPF and REINHARD, JJ., concur.