THE COUNTY OF KENDALL, Plaintiff-Appellant, v. AURORA NATIONAL BANK TRUST No. 1107 *et al.*, Defendants-Appellees.

Second District   No. 2—90—0496

Opinion filed October 10, 1991.—Rehearing denied November 5, 1991.

Dallas C. Ingemunson, State's Attorney, of Yorkville (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for appellant.

Joseph H. Barnett, of Puckett, Barnett, Larson, Mickey, Wilson & Ochsenschlager, Wilson Burnell, and Truemper, Hollingsworth & Wojtecki, all of Aurora, for appellees.

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiff, the County of Kendall (County), appeals the judgment of the circuit court dismissing its complaint for an injunction against defendants, Aurora National Bank, as trustee under trust No. 1107, and Donald and Carol Hamman, the beneficiaries of the land trust. The County sought to enjoin defendants from extracting and removing sand from land held by the trust. This is the second time the parties have been before this court.

The factual basis of this case is well set forth in our previous opinion (*County of Kendall v. Aurora National Bank Trust No. 1107* (1988), 170 Ill. App. 3d 212) (*Kendall County I*). The particular facts relevant to this appeal may be summarized from the earlier opinion, the well-pleaded facts in plaintiff's complaint, and affidavits filed by the defendants in support of a motion to dismiss. Defendants' land is located in an A-1 agricultural district pursuant to the Kendall County zoning ordinance. Prior to May 12, 1987, defendants planted 90 acres of grass sod on their 250-acre parcel at a cost of $58,900 including the purchase of seed and the necessary equipment. They moved in heavy machinery to excavate a 7- to 10-acre pond to contain the water necessary to irrigate the sod. They planned to remove 2 to 3 feet of top soil and 24 to 25 feet of sand

before hitting the subsurface of clay. The sand would be sold commercially. The banks of the pond would be sloped to make the property attractive for possible future residential zoning, and the depth of the pond would not exceed 28 to 30 feet.

The County sued to prevent excavation of the sand which needed to be removed in order to create the pond. The trial court granted an injunction, finding that the excavation was mining and a violation of the County zoning ordinance which prohibited mining in an agricultural zone. On appeal, this court reversed the lower court, holding that removal of the sand served an agricultural purpose, namely, construction of a pond to irrigate the sod, and was protected from zoning regulation by the agricultural purpose exemption found in section 1 of "An Act in relation to county zoning" (Act) (Ill. Rev. Stat. 1987, ch. 34, par. 3151). At the time the Act stated:

> "For the purpose of promoting the public health, safety, morals, comfort and general welfare, *** the board of supervisors *** of each county, shall have the power to regulate and restrict the location and use of buildings, structures and land ***.

> The powers by this Act given shall not be exercised so as to *** impose regulations or require permits with respect to land used or to be used for agricultural purposes ***." (Ill. Rev. Stat. 1987, ch. 34, par. 3151.)

In our opinion of June 1, 1988, the cause was remanded to the circuit court with directions to vacate the injunction. (*County of Kendall*, 170 Ill. App. 3d 212.) We subsequently denied a petition for rehearing, and the supreme court denied a petition for leave to appeal (*County of Kendall v. Aurora National Bank Trust No. 1107* (1988), 122 Ill. 2d 576). The trial court vacated the injunction on January 6, 1989.

During the injunction, defendants managed to irrigate the sod at a cost of $58,000 by piping in water over another property, but, according to Donald Hamman's affidavit in this case, that method is no longer available because the neighboring property has been subdivided and the temporary easement has been lost. The sod planted in 1987 was harvested in October and November 1988. In August and September 1989, after dissolution of the temporary and permanent injunctions, defendants planted 120 acres of sod. They also spent $2,000 to install new road culverts and $2,500 for highway permits to move in heavy equipment. In his affidavit Donald Hamman alleged that the market value of the 1989 sod was $425,000 and that if the pond was not built to help irrigate it, the crop was in danger of becoming a total loss. The major differences in facts between 1987 and 1989 were that defendants intended to use the 7- to 10-acre pond to irrigate 120 rather than 90 acres of sod, their

investment had increased, and the alternate water supply used in 1987 and 1988 had been lost.

Subsequent to our opinion in *Kendall County I*, but prior to the lifting of the injunction, the legislature changed the law concerning the agricultural purpose exemption. Section 1 of the Act was amended (Pub. Act 85—1421, art. I, §3, eff. Dec. 15, 1988), repealed and reenacted as section 5—12001 of the Counties Code. The amendment added the following language:

> "As used in this Act, 'agricultural purposes' do not include the extraction of sand, gravel or limestone, and such activities may be regulated by county zoning ordinance even when such activities are related to an agricultural purpose." Ill. Rev. Stat. 1989, ch. 34, par. 5—12001.

The amendment became effective on December 15, 1988. On December 18, 1989, the plaintiff filed a complaint identical to the one filed in 1987, again requesting an injunction against the defendants on the ground that they planned to engage in mining in an agricultural zone and that mining was allowed only on lands zoned "M3 Gravel Mining District." While the complaint did not specifically allege reliance on the amendment to the statute, plaintiff expressly acknowledges in its appellate brief that it did not in the trial court, and does not in this court, deny reliance on the amendment.

The defendants moved to dismiss the complaint on the grounds of *res judicata*, retroactive legislation, violation of separation of powers, due process, equal protection, vested rights and other grounds. Although the motion was not precisely labeled, the trial court expressly noted that it considered it to be a motion pursuant to section 2—619 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—619), which provides for involuntary dismissal on the ground that a claim is barred by affirmative matters which avoid the legal effect of or altogether defeat the claim.

■ The trial court initially denied each ground of defendants' motion to dismiss because it determined that the facts had changed between 1987 and 1989. On reconsideration, however, while the court again denied relief on all of the other grounds raised by defendants, it concurred with their contention that application of the statutory amendment constituted a violation of the separation of powers doctrine. The court relied on *Sanelli v. Glenview State Bank* (1985), 108 Ill. 2d 1, where our supreme court explained the manner in which legislation may offend the principles of separation of powers:

> "The General Assembly may enact retroactive legislation which changes the *effect* of a prior decision of a reviewing court with

respect to others whose circumstances are similar but whose rights have not been finally decided. Subject to due process and impairment-of-contracts limitations discussed later, the legislature has the authority to change the law for future cases arising from facts existing prior to the effective date of the legislation which made the change. This power extends to decisions in which the law changed by the legislature resulted from a reviewing court's interpretation of a statute as well as from a reviewing court's interpretation of the common law. What the General Assembly may not do is pass a statute in an attempt to change the result of a decision which has been finally decided as between the parties to that case." (Emphasis in original.) 108 Ill. 2d at 10.

The trial court ruled that a final determination of the facts had been made in *Kendall County I* and that there was no material difference between the planned excavation in the earlier cause and the defendants' current plans. Accordingly, since the principle of separation of powers prohibited the legislature from altering a final judgment, the amendment of the statute could not be used to change the result of the prior case. The complaint was dismissed, and this timely appeal followed.

While the County does not dispute the trial court's finding that there was no material change of facts between the previous action and the present action, it contends that the court's reliance on *Sanelli* was misplaced. Plaintiff argues that *Sanelli* was concerned with the retroactive application of new legislation to a matter which has already been finally decided, while the County's conduct in this case involves only the prospective application of new legislation. Plaintiff also focuses on the nature of the dispute, which it asserts is not concerned with a matter which remains static, such as a claim for a money judgment, but involves the future use of land and urges that, for purposes of applying the separation of powers doctrine, the parties' conflict was not "finally decided" by our prior decision.

Defendants respond by stressing that, on the particular facts of the previous case, the court decided that the excavation of sand by defendant was agricultural in nature and could not be regulated under the plaintiff's zoning ordinance. Further, that decision involved the same facts and the same parties as does this case. Under those circumstances, according to defendants, application of the amendment now to allow zoning regulation of its proposed pond excavation attempts to do precisely what *Sanelli* held could not be done through new legislation, *i.e.*, "change the result of a decision which has been finally decided as between the parties to that case." (*Sanelli*, 108 Ill. 2d at 10.) Defendants vigorously insist the County is impermissibly trying to apply the

amended statute retroactively. The defendants' position cannot be sustained.

■ In *Sanelli* the court discussed *Roth v. Yackley* (1979), 77 Ill. 2d 423, where the plaintiffs sought the return of fines previously paid by defendants in criminal cases as conditions of probation under section 10 of the Cannabis Control Act (Ill. Rev. Stat. 1973, ch. 56½, par. 710) and section 410 of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1973, ch. 56½, par. 1410). The *Roth* plaintiffs relied on *People v. DuMontelle* (1978), 71 Ill. 2d 157, where the court had held that fines were not authorized by section 10 of the Cannabis Control Act. However, about three months after *DuMontelle* was decided, both section 10 of the Cannabis Control Act and section 410 of the Controlled Substances Act were amended to authorize fines and costs as conditions of probation. The amendment specifically provided not only that the changes were declaratory of existing law but also that they were applicable to events which occurred prior to the effective date of the amendatory legislation. The *Roth* court held that the amending act violated the principle of separation of powers. The *Sanelli* court explained that the legislation examined in *Roth* violated separation of powers in two ways. First, the legislature attempted, through subsequent legislation, to construe a prior statute contrary to the construction the court had already given that statute. Second, the legislature had tried to reverse previously made decisions of the court by the retroactive application of the amendment. We can find neither of these flaws connected with application of the amendment at issue in the case before us. A statute is not retroactive simply because it relates to prior events or draws upon antecedent events for its operation. *Griffin v. City of North Chicago* (1983), 112 Ill. App. 3d 901, 905.

■ First of all, it is self-evident and not contested by defendants that there is nothing on the face of the amendment expressly making it retroactive. Nor is there any implication in its language that it is meant to be retroactive legislation. Consequently, we do not perceive any attempt to interfere with or modify the construction we gave to the Act in *Kendall County I.*

As to the second problem described in *Sanelli*, defendants posit that the County's insistence that it can now regulate their pond excavation through its zoning ordinance is an attempt to use the amendment to reverse our decision in *Kendall County I.* There is no question that, under the law as we interpreted it in *Kendall County I*, defendants could excavate for their pond. However, there is no vested right in the continuance of a law, and a legislative body has an ongoing right to amend a statute or ordinance. (*Fallon v. Illinois Commerce Comm'n* (1948), 402

Ill. 516, 526; *Sagittarius, Inc. v. Village of Arlington Heights* (1980), 90 Ill. App. 3d 401, 404.) It is within the prerogative of the General Assembly to decide that a particular practice is not in the best interest of the public and to enact legislation to correct that practice for the future. *Sanelli v. Glenview State Bank* (1985), 108 Ill. 2d 1, 43 (Simon, J., dissenting).

Just as there is no vested right in the continuation of a zoning ordinance (*Thompson v. Cook County Zoning Board of Appeals* (1981), 96 Ill. App. 3d 561, 577; *Citizens Bank & Trust Co. v. City of Park Ridge* (1972), 5 Ill. App. 3d 77, 81), we do not think a property owner has a vested right in the indefinite continuation of what was determined to be a particular, permissible use of his property at a specific point in time. Defendants' rights were vindicated in *Kendall County I* because, as we interpreted it, the statute gave those rights. Our opinion was filed in June 1988. The County did not file this suit until a year and a half later, in December 1989. In effect, the rights secured to defendants in *Kendall County I* were viable from the time we found them to be protected by the statute, or, at the very least, from the time the injunction was vacated in January 1989, until the time this challenge was initiated. By that time the statute had changed. The County now seeks to rely on the amended statute. We do not perceive this sequence of events as an attempt to apply the amendment in a retroactive fashion. On the contrary, we believe it to be merely an attempt by the County to enforce its zoning ordinance in conformance with the law as it existed at the time the complaint was filed. The County's conduct in no way reaches back and changes the rights secured in *Kendall County I*. Since this case does not involve retroactive application of new legislation, the County's reliance on the amendment to the Act does not violate the principles of separation of powers, and plaintiff's claim is not barred on these grounds.

Even though we agree with the County that the facts of this case do not present a separation of powers issue and have disposed of the only issue formally raised on appeal accordingly, we do not consider our review complete. A reviewing court, upon its own motion, may rely on other grounds to reach a just result and maintain a sound and uniform body of precedent. *Wozniak v. Segal* (1974), 56 Ill. 2d 457, 460-61; *Hux v. Raben* (1967), 38 Ill. 2d 223, 224-25; *Sanderson v. De Kalb County Zoning Board of Appeals* (1974), 24 Ill. App. 3d 107, 110.

Defendants claimed in the court below that application of the statutory amendment would violate their due process rights. The trial court addressed defendants' concerns, saying that it was necessary to determine whether the amendment constituted a taking of property without due process of law. Citing *Sanelli* for the proper approach to due pro-

cess analysis, the court focused its inquiry on whether defendants had suffered a substantial impairment to their rights. After noting Donald Hamman's affidavit statement regarding loss of the easements which had been utilized to pipe in water for the sod, the court remarked that no evidence had been presented by defendants to show that some watering method, other than a pond, would be "so unreasonable." Recalling evidence offered in *Kendall County I* regarding the use of a well for watering and Donald Hamman's testimony, also in *Kendall County I*, that if it became necessary he would dig an auxiliary well, the court concluded, "Therefore, based upon the Defendant's failure to meet his burden in establishing a substantial impairment, the due process argument must fail." The trial court obviously found that, since defendants' use of their property would be only minimally impaired if they were not allowed to build a pond, there was no due process violation.

The trial court relied on *Sanelli*, where due process concerns were triggered by an express provision for retroactive application of the legislation at issue there. The *Sanelli* court framed its inquiry as whether such application constituted a taking without due process of law. In contrast, in the instant case we have determined that the County is not attempting to apply the amendment retroactively. Consequently, due process issues arise in a slightly different context. In their motion to dismiss, motion to reconsider, and at oral argument, defendants asserted that their right to excavate and create a pond for irrigation purposes was "vested" by our decision in *Kendall County I* and was "sheltered" or "grandfathered" from the effects of legislation adopted after *Kendall County I*. They also repeatedly refer to their "vested" rights, without citation to authority, in their appellate brief. While defendants have not made a specific, clearly delineated "vested rights" argument, it is plainly evident that they claim their right to excavate and remove sand from their property was secured by *Kendall County I* and cannot be taken away from them. They characterize the County's effort to block such excavation as an attempt to deprive them of "vested" property rights without due process of law.

As we discussed above, no one has a vested right in any rule of law entitling him to insist that it should remain unchanged for his benefit. (*Maki v. Frelk* (1968), 40 Ill. 2d 193, 196.) Nevertheless, the right of a legislative body to amend or repeal legislation is limited by the prohibition on legislation which affects vested rights. (*Sagittarius, Inc. v. Village of Arlington Heights* (1980), 90 Ill. App. 3d 401, 404.) However, a vested right is more than a mere expectation based upon anticipation of the continuance of existing law; it must have become a title, legal or equitable, to the present or future enjoyment of property. (*Ho-*

gan v. Bleeker (1963), 29 Ill. 2d 181, 188; *Griffin v. City of North Chicago* (1983), 112 Ill. App. 3d 901, 905.) In the event an existing law changes through amendment or appeal prior to the vesting of a right, there is no cause to object. (*Griffin*, 112 Ill. App. 3d at 905.) A right is said to be vested when it has been so far perfected that it cannot be taken away by statute. (*Sanelli*, 108 Ill. 2d at 20.) These principles are often applied in cases challenging changes in zoning classifications or the denial or revocation of building permits. In *People ex rel. Skokie Town House Builders, Inc. v. Village of Morton Grove* (1959), 16 Ill. 2d 183, the court set forth the rule as follows:

> "[W]here there has been a substantial change of position, expenditures or incurrence of obligations made in good faith by an innocent party under a building permit or in reliance upon the probability of its issuance, such party has a vested property right and he may complete the construction and use the premises for the purposes originally authorized, irrespective of subsequent zoning or a change in zoning classification." *Skokie Town House Builders*, 16 Ill. 2d at 191.

Accord *Pioneer Trust & Savings Bank v. County of Cook* (1978), 71 Ill. 2d 510, 522-23; *Fifteen Fifty North State Building Corp. v. City of Chicago* (1958), 15 Ill. 2d 408, 416.

In *Skokie Town House Builders* the plaintiff landowner, in reliance on the existing village zoning ordinance, paid to have plans prepared for the construction of townhouses and paid the village $1,630 for permits and $200 as a deposit for sidewalks. The zoning ordinance was then amended in such a way as to preclude plaintiff's proposed construction. The monies paid to the village were not tendered back to plaintiff. The court found plaintiff had a vested right under the zoning ordinance prior to its amendment and was entitled to complete construction of the townhouses. While not all expenditures and actions taken in reliance on a zoning classification are sufficient to create a vested right (*O'Hare International Bank v. Zoning Board of Appeals* (1976), 37 Ill. App. 3d 1037, 1040), the rule which makes vesting dependent upon a substantial change of position is based on the unfairness of halting a project after expenditures have been made and obligations incurred in a good-faith reliance on the issuance of a permit (*Osina v. City of Chicago* (1975), 28 Ill. App. 3d 955, 961).

■ Defendants in this case seek to establish a vested interest under our interpretation of the statute in *Kendall County I*, rather than under a zoning ordinance or building permit. However, like the latter situations, this case is one where the landowner claims to have begun a project on his land in reliance on, and in accord with, existing land use law

only to have the law change before he could complete the project. We think the principles enunciated in the zoning cases are equally applicable here.

Whether defendants have a vested right to complete their pond depends on the extent to which they changed their position or made expenditures in reliance on the law as it existed following *Kendall County I*. In this regard it must be noted that defendants' opportunities to pursue their rights were somewhat circumscribed in that they could not act pursuant to the favorable ruling they received in *Kendall County I* until January 1989 when the injunction was lifted. Within this limitation, according to Donald Hamman's unrefuted affidavit, defendants did change position and make expenditures related to the pond. Accordingly, there was evidence before the trial court on the issue of vested rights. It does not appear to us, however, that the trial court made any findings or determinations on this particular aspect of due process. In the portion of its order dealing with due process the court spoke only of substantial impairment and stated that it would not be unreasonable for defendant to secure water from a source other than a pond. As mentioned above, since the court was following *Sanelli*, it evidently considered the statute to have been applied retroactively—contrary to our ruling here—and the vested rights analysis set forth above never came under consideration.

Defendants have asserted both here and in the court below that they have vested rights. Since the trial court made no findings or fact determinations on this issue, we do not have an adequate record on which to base a proper review. The matter must be remanded to the trial court for consideration and appropriate findings regarding the question of whether defendants' actions subsequent to *Kendall County I* gave them a vested property right to excavate and remove the sand which they claim is necessary in order to construct an irrigation pond.

On a final note, we will briefly address one other point argued by defendants in the trial court because, if, upon remand, the lower court finds plaintiff's action is not barred by vested rights considerations, we are confident the issue will be raised again.

Plaintiff alleged in this case, as it did in *Kendall County I*, that defendants' proposed excavation constitutes mining. Defendants charge that this claim flies in the face of our ruling in *Kendall County I* that they are engaged in agriculture, not mining. However, in our earlier case we did not say that defendants' extraction and removal of sand and gravel did not constitute mining. What we said was that the basic, overall use of defendants' land was agricultural in nature and that defendants' excavation was proposed for an agricultural purpose. As such, because of the statute, that excavation was beyond the reach of the

County zoning laws. Once we determined that an agricultural purpose was being served we found it unnecessary to go further. Consequently, we made no determination as to whether defendants were mining or not mining.

■■ It is not disputed that the basic facts of this case have not changed since *Kendall County I* was decided. Accordingly, the conclusion is warranted that defendants' use of their land is still basically agricultural. However, removal of sand, gravel, and limestone, even when serving an agricultural purpose, is no longer sheltered from application of the zoning ordinance. If the mining ordinance is applicable to the facts here, the ordinance can be used to prohibit mining in an agricultural zone just as other sections of the ordinance can be used, for example, to prohibit industry or manufacturing in a residential zone. We do not agree, as urged by defendants, that the statutory amendment merely constituted enabling legislation, and the County needs to amend its zoning ordinance to regulate, specifically, extraction of sand and gravel when related to agricultural purposes. In this regard we note that, by its express language, the amendment precludes such extraction from being an "agricultural purpose." We think the effect of the amendment was only to narrow the scope of the agricultural purposes exception to the exercise of the zoning power, not to give the County new power to regulate through zoning.

Having said all of the above, we emphatically stress that the zoning ordinance itself is not before us, and we make no determination as to whether the "M3 Gravel Mining District" provision of the Kendall County zoning ordinance contains language making it applicable to the particular facts of this case.

Based on the reasons set forth above, the order of the circuit court of Kendall County dismissing Kendall County's complaint is reversed, and the matter is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

McLAREN and GEIGER, JJ., concur.